MOORE, J.
_JjThe defendant, Wesley Ricks, was convicted by a jury on five counts of aggravated-rape, in violation of La. R.S. 14:42, and four counts of cruelty to a juvenile, in violation of La. R.S. 14:93. He was sentenced to serve life imprisonment at hard labor on counts one through five of aggravated rape, with counts two through five to be served concurrently with each other and consecutive to count one, and ten years imprisonment at hard labor on counts six through nine of cruelty to a juvenile, with counts six and seven to be served concurrently with each-1 other and consecutive to counts one through five, and with counts eight and nine to be served concurrently with each other and consecutive to all other counts. The defendant appealed, urging four assignments of error. For the following reasons, we affirm the convictions and sentences.
FACTS
Ricks was indicted by a grand jury on January 24, 2013, on five counts of aggravated rapé, in violation of La. R.S. 14:42, and four counts of cruelty to a juvenile, in violation of La, R.S. 14:93. The victims of the crimés were two children, A.C. (DOB 5/5/99) and S.J. (DOB 4/5/98), of Twhyler Coutee, a woman with whom Ricks had a live-in relationship. . The juveniles said Ricks forced them to perform sexual intercourse and/or oral sex with him, and, among other things, he beat them with an extension cord after .they reported it to their mother. These acts of aggravated rape and cruelty to a juvenile took place between 2009 and December 2012. Upon learning that a warrant was issued for his arrest, Ricks-fled to Miami, Florida, where he was apprehended by federal marshals. He was arrested on | ¡April 13,2013.
Ricks declined the assistance of a court-appointed attorney, choosing instead to represent himself, contrary to the court’s advice. At the arraignment, the trial court set a hearing to determine whether Ricks *618 was capable of representing himself. During that hearing, the victims’ mother claimed the charges were a lie and wished to have the charges against Ricks dropped. The court advised her to speak with the district attorney. On June 20, 2013, the court appointed Carl Cooper as standby counsel for Ricks. The court advised Ricks that Cooper was there merely to answer questions, but would not provide strategy.
Ricks filed numerous pretrial motions, including motions for discovery and a bill of particulars, a motion for speedy trial, a motion to quash the bill of information, and requests for sanctions. On September 10, 2013, he filed a motion to suppress statements of the victims and photographic evidence. These motions were taken up by the court on December 12, 2013. The court granted the request for a bill of particulars, ordering the state to provide Ricks with the bill of particulars by December 27. The court denied the motion to suppress, request for sanctions, and motion for discovery. The court passed the motion for speedy trial pending the resolution of the request for bill of particulars.
Jury trial commenced on January 28, 2014. Bastrop Police Department Sergeant Marvin Holmes testified he was the detective who received a report that A.C. and S. J. had been sexually abused by Wesley Ricks, who was identified in open court as the defendant. Ricks questioned laSgt. Holmes at length regarding the fact that the warrant, obtained by Sgt. Holmes and introduced as Exhibit SI, states that Ricks cut the victims’ hair with trimmers, while the indictment alleges that scissors were used. Sgt. Holmes identified five photographs of A.C. showing welts on her legs and clipped hair.
Shauntee Slack, supervisor of the More-house Parish Department of Children and Family Services, testified that she was an investigator for the department in December 2012. On December 2, 2012, she was called to interview A.C. and S.J. regarding allegations of sexual abuse. Slack asked Dr. Meade O’Boyle, a physician board certified in pediatric child abuse, to examine both A.C. and S.J. Ms. Slack’s reports were admitted into evidence.

Testimony of AC.

A.C. was born on May 5, 1999. A.C. testified that she was thirteen years old in the eighth grade at Morehouse Junior High when the first incident occurred. While the other family members were away picking pecans, Ricks made her take off her clothes and took photos of her. She stated that when she initially resisted, Ricks hit her until she complied. A.C. told her sister, S.J., about the incident. The two girls decided to report this incident as well as S.J.’s experiences to their mother. Her mother told Ricks, who then beat both girls with an extension cord and cut off A.C.’s ponytail with a pair of scissors.
Another incident occurred a short time later during the Thanksgiving holidays in 2012, most likely on the Friday after Thanksgiving. A.C. said |4that she was asleep on the couch when Ricks awoke her and pointed for her to go to a room in the back of the house trailer. Once in the room, he blindfolded her with a bandana and tied her hands. Then he told her to perform oral sex on him. She complied. At trial she testified that it was hopeless to cry for help. The whole family feared him. Ricks threatened to kill her and hurt her grandmother and all her family if she told anyone.
A.C. held firm to her account of the two incidents when Ricks cross-examined her, confirming that there were two incidents of sexual abuse: “Once you made me take off my clothes and oral sex once.” When Ricks asked her why she did not call for help from her mother and sister who were *619 asleep in the living room .during the forced oral sex incident, A.C. responded: “Because everyone in the house is scared of you. Who was gonna help me?” When he asked why she did not tell her mother after the episode, A.C. said, “[b]ecause the first time I told mama[,]she told you[,] and ya’ll beat me.” She then clarified, “You beat me. She didn’t. She just sat there and watched you beaten’me.”
A.C. also identified the pictures of her legs showing injuries. She testified that the injuries were caused by an extension cord that Ricks used when he beat her after she told her mother about the first incident. She also identified photographs of her hair showing that her ponytail had been cut off by Ricks. She said he used a pair of scissors to cut off her hair. She said that he called her a “bitch.”
A.C. witnessed Ricks beat ’ her sister, S.J., with the extension cord and hit her in the face with his hands. He also cut SJ.’s hair using clippers. | ¿These were punishments for them telling their mother what Ricks had done to them.

Testimony ofS.J.

S.J. was born on April 5, 1998. S.J. stated that in 2009, the family lived on Hoover Street. She was 11 years old when Ricks took her into the washroom and made her take off her clothes. He made her drink vodka and forced her to have vaginal sexual intercourse with him. When she was 12 years old and the family was living on Harrington Street in Bas-trop, Ricks again forced her to have intercourse with him. Afterwards, when the family lived on Parkhurst, Ricks continued to force S.J. to have vaginal sexual intercourse with him on several occasions. Ricks also forced her to perform oral sex on him, once while the family lived on Harrington Street and once while they lived on Parkhurst.
S.J. said that Ricks threatened to hurt her family if she ever told what happened, particularly to their grandmother with whom the girls went to live. When A.C. told S.J. about the first incident, when the rest of the family was picking pecans, S.J. decided it was time to tell their. mother. Up to that point, she had kept silent because she was afraid of Ricks. She testified that after she told her mother, Ricks beat her, kicked her and whipped her and A.C. with an extension cord for allegedly lying about him. He also shaved part of her head with clippers.
S.J. further testified that Ricks took photos of her naked with his cell phone and threatened to post them on the Internet if she exposed him. She recalled one incident in which he checked her out of school. She said that | (¡Ricks thought she was pregnant, so he put peroxide and bleach in a.Summer’s Eve bottle and made her douche with it.
Dr. Meade O’Boyle testified that she interviewed the children separately on December 5, 2012. Dr. O’Boyle’s recollection of the. events as reported to her by the girls was consistent with their own .testimony, except that Dr. O’Boyle recalled that A.C. told her of two incidents in which Ricks made her .remove her clothes so he could take photos of her naked. The third incident involved the forced oral sex. When she was questioned regarding the lack of physical evidence of sexual abuse to A.C., Dr; O’Boyle testified that there would not be physical evidence of forced oral sex unless an infection was present or DNA samples were taken immediately after the incident. Dr. O’Boyle’s report indicates that the physical findings were consistent with the history provided by A.C.
Dr. O’Boyle testified that A.C. was fearful of Ricks and that- children in those circumstances are often afraid to report the abuse. A.C. reported the abuse to her *620 grandmother on December 1, 2012. She examined the girls on December 5, 2012.
S.J. reported to Dr. O’Boyle that the abuse occurred two times per week, and more ' than twenty times total. Dr. O’Boyle’s report shows physical findings, a hymenal ring that was not intact, that is consistent with SJ.’s account of the abuse.
Twhyler Coutee, the mother of A.C. and S.J., testified regarding her knowledge of the abuse of A.C. and S.J. Coutee confirmed that Ricks lived with them on Harrington Street, Hoover Street, and Park-hurst between 2009 |7and 2012. Coutee testified that she worked evenings and often left the girls in the care of Ricks. She identified a photograph of A.C., S.J. and her third daughter, taken in 2009. Her daughters informed her of the sexual abuse before the allegations were reported to officials. Coutee testified that she told the police that she cut the girls’ hair, but that she was lying. She said that Ricks cut the girls’ hair and admitted that she reported to police that she was the one who beat the girls-with an extension cord. She testified that she only said that because she was afraid of Ricks and because Ricks asked her to lie for him. She stated that Ricks threatened to hurt them or leave the state with them if the girls reported the abuse. She continued to lie to investigators after Ricks’ arrest because she did not want Ricks to hurt her son who was in jail with Ricks. Coutee testified that she was now testifying that Ricks committed the abuse because she felt that she now needed to tell the truth: “I just feel I just have to tell the truth. I mean I can’t do this anymore.”
During the cross-examination of Coutee, Ricks attempted to prove that he was the victim of sexual abuse by A.C. and S.J. Coutee admitted to one instance in which the girls entered the bathroom while Ricks was showering, which Ricks contended was sexual abuse. She stated that the girls were punished for those actions, but that she did not consider it sexual abuse.
On January 31, 2014, the jury unanimously found Ricks guilty of all counts as charged. A presentence investigation was ordered. Ricks filed two additional motions to quash, motions for hew trial and arrest of | judgment, and a petition for writ of habeas corpus, and made an oral motion for a post-verdict judgment of acquittal.
On April 8, 2014, after denying all of the defendant’s motions, the trial court sentenced the defendant. Ricks was sentenced to serve life imprisonment at hard labor on counts one through five of aggravated rape, with counts two through five to be served concurrently with each other and consecutive to counts one. The defendant was sentenced to serve ten years’ imprisonment at hard labor on counts six through nine of cruelty to a juvenile, with counts six and seven to be served concurrently with,each other and consecutive to counts one through five, and with counts eight and nine to be served concurrently with each other and consecutive to all other counts. A timely motion for appeal was filed and the order of appeal was signed on April 8, 2014.
DISCUSSION
On appeal, the defendant raises four assignments of error, all of which allege that the evidence at trial was insufficient to convict Ricks of raping A.C. and S.J., and insufficient to convict Ricks of cruelty to A.C. and S.J. He contends that, because of the exculpatory testimony of Twhyler Cou-tee and the lack of physical evidence, the state did not prove the charges against Wesley Ricks beyond a reasonable doubt. Coutee, the mother of A.C. and S.J., testified that she repeatedly told investigators that her children were lying about the *621 rape and cruelty charges.- She further reported to police that it was only she who disciplined or cut the hair of the girls.
IflRicks contends that Coutee only subsequently testified that he did in fact rape the girls because she, was threatened with charges and because the girls were removed from her custody as a result of her exculpating statements. Further, he asserts that Coutee supported him emotionally and financially after the charges of rape and cruelty were made.
In response, the state argues that the testimony of A.C. and S.J. showed that the defendant, Wesley Ricks, committed aggravated rape and cruelty to a juvenile. The state asserts that the testimony of the girls was consistent with what each child reported to Dr. Meade O’Boyle and Shaun-tee Slack. The state also • asserts that Twhyler Coutee testified that Ricks beat both girls and threatened her family if anyone told of the abuse. The , state argues that evidence, viewed in a light most favorable to the prosecution, establishes the essential elements of each charge against Ricks.

Sufficiency of the Evidence

A claim of insufficient evidence is determined by whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). On review, the appellate court considers whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could hav.e found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Crossley, 48,149 (La.App. 2 Cir. 6/26/13), 117 So.3d 585, writ denied, 2013-1798 (La.2/14/14), 132 So.3d 410. The appellate court does not assess the credibility of witnesses- -or reweigh evidence; and gives great deference to the jury’s decision to accept or reject the testimony of a witness or the weight the jury .giyes to direct or. circumstantial evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442; State v. Eason, 43,788 (La.App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App. 2 Cir. 5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529; State v. Hill, 47,568 (La.App. 2 Cir. 9/26/12), 106 So.3d 617.
Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he -saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial' evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. State v. Lilly, supra; State v. Robinson, 47,437 (La.App. 2 Cir. 11/14/12), 106 So.3d 1028, writ denied, 2012-2658 (La.5/17/13), 117 So.3d 918. The trier of fact is charged with weighing the credibility of this evidence and on review, the same standard as in Jackson v. Virginia is applied, giving great deference to the fact finder’s conclusions. State v. Hill, supra. When jurors reasonably reject the | uhypothesis of innocence advanced by a defendant, the hypothesis falls, and the defendant is guilty unless theré is another hypothesis which *622 raises a reasonable doubt. State v. Sosa, 2005-0213 (La.1/19/06), 921 So.2d 94, 99, reh’g denied, 3/10/06; State v. Captville, 82-2206 (La.2/27/84), 448 So.2d 676, 680, reh’g denied, 3/23/84.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Glover, 47,311 (La. App. 2 Cir. 10/10/12), 106 So.3d 129, writ denied, 2012-2667 (La.5/24/13), 116 So.3d 659; State v. Speed, 43,786 (La.App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness in whole or in part; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000); State v. Woodard, 47,286 (La.App. 2 Cir. 10/3/12), 107 So.3d 70, writ denied, 2012-2371 (La.4/26/13), 112 So.3d 837; State v. Hill, supra.
A victim’s or witness’s testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. State v. Davis, 02-1043 (La.6/27/03), 848 So.2d 557, 559. In the absence of internal contradiction or irreconcilable conflict with physical 112evidence, one witness’s testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. State v. Robinson, 02-1869 (La.4/14/04), 874 So.2d 66, 79.
By his first assignment of error, Ricks argues that there was insufficient evidence to prove that he was guilty beyond a reasonable doubt of raping A.C.
Rape is defined as “the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.” La. R.S. 14:41.
An aggravated rape, under La. R.S. 14:42(A)(2 & 4), is defined as:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
[[Image here]]
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
A.C. testified that she was asleep in the living room when Ricks awoke her and told her to go to the back bedroom. She testified that he covered her eyes and bound her hands before telling her to perform oral sex on her and she complied. Even though her mother and sister were asleep in | ^another room in the house, she did not resist or call for help.
La. R.S. 14:42(A)(1) requires that the victim resist the act to the utmost, but be overcome by force. Arguably, A.C. was prevented from resisting Ricks’ assault due to a showing of force, i.e. the binding of her hands. However, a review of relevant case law indicates that the victim must first resist her attacker, and be over *623 come by a showing of force, such as hitting or choking. See State v. Nguyen, 11-229 (La.App. 5 Cir. 12/28/11), 88 So.3d 511, writ denied, 2012-0287 (La.5/18/12), 89 So.3d 1192 (defendant overcame resistance by striking the victim in the face, forcing her onto the couch, and rendering her unconscious); State v. Davis, 2009-1061 (La.App. 3 Cir. 4/7/10), 36 So.3d 351, writ denied, 2011-1908 (La.4/27/12), 86 So.3d 623 (defendant overcame resistance by throwing the victim from the bed, holding her hair, striking her, dragging her across the floor, and wrapping her face with a pillow).
La. R.S. 14:42(A)(2) requires that the victim be “prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution.” A.C. testified that a few weeks prior to being forced to perform oral sexual intercourse on him, Ricks beat her until she agreed to take her clothes off so he could take photographs of her naked body. She reported this incident to her mother, who sided with Ricks’ denial, and watched while Ricks severely beat A.C. with an extension cord, and further humiliated her by cutting off her pony tail. Furthermore, Ricks also threatened to kill her and harm other members of the family should she tell anyone. Thus, A.C., who was only 13 years old, was entirely justified in luher belief that resistance was futile. She was under a continuing threat of physical violence or perhaps even death if she refused to obey Ricks, including his order to perform oral sexual intercourse with him while bound and blindfolded.
We conclude that the evidence was sufficient to prove the offense of aggravated rape of A.C. beyond a reasonable doubt. A.C. testified at length regarding the abuse suffered by Ricks prior to this incident and that Ricks threatened both A.C. and her family if she ever disclosed the sexual abuse. Ricks had previously beaten A.C. with an extension cord, on November 23, 2012, when she informed her mother of his acts of sexual abuse. He also, bound her hands and covered her eyes to prevent resistance during the act. A.C. testified that she did not resist because everyone in the house was afraid of Ricks. A.C. was thus prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
Ricks has not provided any physical evidence to contradict the testimony of A.C., nor has he noted any internal contradiction in the testimony of A.C. In the absence of any such internal contradiction or irreconcilable conflict with physical evidence, A.C.’s testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion that Ricks used force to prevent resistance by binding A.C.’s hands. The jury clearly found the testimony of A.C. to be credible and believable. As noted above, this court does not assess the credibility of witnesses or reweigh evidence. Great deference is given to the jury’s determinations of | ^credibility. ' Reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime of the aggravated rape of A.C. were proven beyond a reasonable doubt.
By his second assignment of error, Ricks contends that there was insufficient evidence to prove that he was guilty beyond a reasonable doubt of raping S.J.
An aggravated rape, under La. R.S. 14:42(A)(4), is defined as:
A. Aggravated rape is a rape commit-, ted upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim *624 • because it is committed under any one or more of the following circumstances: ⅜ ⅜ ⅜
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
In order to prove that a defendant is guilty of aggravated rape of a child less that . thirteen, under La. R.S. 14:42(A)(4), the state must prove beyond a reasonable doubt that: (1) the defendant engaged in anal, oral, or vaginal intercourse deemed to be without consent of the victim because of (2) the victim’s age at the time of the rape. State v. Prejean, 2007-1269 (La.App. 3 Cir. 4/30/08), 981 So.2d 272. Force is not an element of rape of a child under the age of 12. State v. Taylor, 36,066 (La.App. 2 Cir. 6/12/02), 821 So.2d 633, writ denied, 2002-2068 (La.6/20/03), 847 So.2d 1222.
Ricks was indicted on four counts of the aggravated rape of S.J., which occurred on or about 2009 through December 2012. His arguments lifiare the same as outlined above. Under La. R.S. 14:42(A)(4), the state must only prove that oral or vaginal intercourse occurred and that the victim was under the age of 13 at the time.
In this case, a birth certificate was introduced as evidence showing that S.J. was born on April 5, 1998. S.J. testified that the first time she was raped by Ricks occurred in 2009. In 2009, S.J. would have been 10 or 11 years old, depending upon which month or months the incident(s) occurred. S.J. further testified that Ricks continued to rape her, approximately twice per week, until 2012. The state clearly proved the second element, that S.J. was below the age of 13 at the time of at least four of the occurrences, between 2009 and when S.J. turned 13 years-old, on April 5, 2011.- As such, no showing of force is required.
•In this case, S.J. testified that Ricks first raped her in 2009. S.J. testified that the first incident occurred after she told a landlord where her mother could be located.- S.J. also testified that Ricks continued to force her to have sexual intercourse with him approximately two- times per week between 2009 and 2012. Dr. O’Boyle testified that her physical examination of S.J., on November 5, 2012, confirmed that vaginal sexual intercourse had occurred.
Ricks has not provided any physical evidence to contradict the testimony of S.J., nor has he noted any internal contradiction in the testimony of S.J. In the absence of any such internal contradiction or irreconcilable conflict with physical evidence, S.J.’s testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion.
|17The jury obviously found the testimonies of S.J. and Dr. O’Boyle to be credible. As noted above, this court does not assess the credibility of witnesses or reweigh evidence. Great deference is given to the jury’s determinations of credibility. Reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the two essential elements of the crime of the aggravated rape of S.J. were proven beyond a reasonable doubt as to at least four occasions. This assignment is, therefore, without merit.
By his third and fourth assignments of error, defendant contends that there was insufficient evidence to prove that he was guilty beyond a reasonable doubt of cruelty to A.C. and S.J.
La. R.S. 14:93(A)(1) states:
A. Cruelty to juveniles is:
(1) The intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen where *625 by unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child’s age shall not be a defense.
The term “intentional” within the meaning of the statute requires general criminal intent to causé a child unjustifiable pain and suffering. State v. Woods, 44,491, 44,492 (La.App. 2 Cir. 8/19/09), 16 So.3d 1279, writ denied, 2009-2084 (La.4/9/10), 31 So.3d 380, habeas corpus denied, 2013 WL 6284521 (W.D.La.2013). General criminal intent is “present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act 118or failure to act.” LSA-R.S. 14:10(2). An alternative to proving the defendant had general criminal intent to mistreat or neglect the child thereby causing the child unjustifiable pain and suffering is to prove that the defendant was criminally negligent in his mistreatment or neglect of the child. State v. Joseph, 2011-1583 (La.App. 3 Cir. 6/13/12), 94 So.3d 922. Criminal negligence “exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.” La. R.S. 14:12.
The term “mistreatment” as used in the statute means abuse. State v. Woods, supra. In addition to the requisite intent or negligence, mistreatment or neglect, the state must prove .that the mistreatment or neglect caused unjustifiable pain and suffering. State v. Joseph, supra. A victim need not have .sought medical attention-in order to find unjustifiable pain and suffering. State v. C.S.D., 08-877 (La. App. 3 Cir. 2/4/09), 4 So.3d 204.
Ricks was indicted on one count of cruelty to a juvenile, for the beating of A.C. with an extension cord, and one count of cruelty to a juvenile, for the shaving of A,C.’s head with electric clippers. Ricks was also indicted on one count of cruelty to a juvenile, for the beating of S.J. with an extension cord, and one count of cruelty to a juvenile, for the shaving of SJ.’s head with electric clippers. As outlined above, birth certificates submitted into evidence showed the birthdays of S.J. and A.C. as | T ¡April 5, 1998 and May 5, 1999, respectively. Both S.J. and A.C. were under the age of 17 at the time of each of the incidents alleged.
As to the first count, A.C. testified that, just prior to Thanksgiving 2012, Ricks beat her with an extension cord. That testimony was corroborated by the eyewitness testimony of S.J. and Coutee. Photographs confirmed the presence1 of loop marks on the legs of A.C. Dr. O’Boyle and Shauntee Slack testified that they observed these scars or marks approximately one week after the incident. As to thé third count, S.J. testified that,-after she informed her-mother of the abuse, Ricks beat her with his hands,' kicked her, and whipped her with an extension cord. - That testimony was corroborated by the eyewitness testimony of Coutee. Slack also testified that she observed loop marks or scars on S.J.’s legs during a physical examination on December 2, 2012. We find, under these circumstances, that beating a child with fists, kicking the child, and whipping the child with an extension cord so severely that marks or scars were left clearly rises to the level of unjustifiable pain or suffering.
The jury also found Ricks guilty of two counts (two and four) of cruelty to a juvenile for cutting off AC.’s pony tail and shaving the left side of S.J.’s head. A.C. testified that Ricks cut her long ponytail *626 off. S. J. said that she observed Ricks with scissors and A.C.’s cut hair. A.C. testified that Ricks told her that he cut her hair because 'he wanted to make her “ugly and baldheaded.”
On the same day, Ricks shaved the left side of S.J.’s head with clippers. A.C. witnessed the event and testified that Ricks’ said he shaved |anS.J.’s hair because “she was lyin’ on him” to their mother.
We conclude that Ricks had specific intent to cause A.C. and S.J. pain and suffering as a result of cutting their hair and disfiguring their appearance. Reviewing the evidence in a light most favorable to the prosecution, we conclude a rational trier of fact could have found the essential elements of the crime of cruelty were proven beyond a reasonable doubt to all four counts. Accordingly, the evidence to sustain the convictions was sufficient beyond a reasonable doubt.
CONCLUSION
For the foregoing reasons, we affirm the five convictions and sentences for aggravated rape and four convictions and sentences for cruelty to a juvenile.
CONVICTIONS AND SENTENCES AFFIRMED.