WILLIAMS, J.
It The defendant, Rodney Lewis, was charged by amended bill of indictment with aggravated rape, a violation of LSA-R.S. 14:42(A)(4), and molestation of a juvenile, a violation of LSA-R.S. 14:81.2(A)(1). Following a jury trial, the defendant was found guilty as charged. Thereafter, the defendant was adjudicated a third-felony habitual offender. The trial court sentenced defendant to life imprisonment without the benefit of parole, probation or suspension of sentence for each offense, to be served concurrently. Defendant appeals his conviction of aggravated rape. For the following reasons, we affirm the defendant’s convictions and sentences.
FACTS
In September 2014, Olivia Jones, the mother of 15-year-old S.J.,[1] found a sequence of text messages on S.J.’s cell phone suggesting that the girl was pregnant and that defendant, Jones’ live-in boyfriend, could be the father. When questioned by her mother, S.J. said that defendant had been sexually molesting her since she was 11 years old and that she might be pregnant. The next day, Jones took S.J. to a medical clinic, where a physician confirmed the pregnancy. Jones and S.J. then went to the DeSoto Parish Sheriffs Office to file a criminal complaint against defendant. They spoke with Detective Garland Hensley, who referred S.J. to the Gingerbread House for an interview. Defendant was arrested and later charged with aggravated rape and molestation of a juvenile. In April 2015, prior to trial, the DeSoto Parish District Attorney’s office received a letter from defendant in which he admitted to having sexual intercourse with S.J., but he claimed |2that the girl had *497 initiated the sexual conduct. He also claimed the sexual abuse did not start until after S.J. was 13 years of age.
At trial, Olivia Jones testified that she is the mother of S.J. and two other daughters. She stated -that defendant is not their father. Jones told the jury that she and defendant were not married, but had been living together for over seven years. She testified that in September 2014, she told defendant to leave the home because she found out about his sexual abuse of S.J. According to Jones, defendant was like a father to S.J. and her other two daughters and treated them well. Jones stated that she would always love defendant, in spite of S.J.’s allegations and the charges against him. On cross-examination, Jones testified that she had lived with defendant, her mother and three daughters in three different locations between June 2010 and September 2014. Jones stated that some years after she and defendant started living together they moved to another house and then one year later moved to the house where she and her daughters resided at the time of trial. Jones testified that at some point defendant traveled for work and returned home on the weekends over a period of approximately two years, but she was not sure of the dates. According to Jones, defendant and her mother regularly watched S.J. and her sisters when Jones was at work or otherwise away from the home.
S.J. testified that she was born in June 1999 and was 15 years old at the time of trial. S.J. stated that defendant was like her stepfather, even though he and her mother had not married. She further stated that defendant was the adult in charge when her mother was away. S.J. testified that ^defendant first sexually abused her when she was 11 years old. • S.J. explained that she knew that she was 11 years old when the abuse began because she remembered that the first incident occurred before she started the sixth grade. S.J. testified that the first time the sexual abuse occurred, she and defendant were home alone. She testified that defendant called her into the bedroom he shared with her mother and locked'the door behind them; he then turned up the volume of the television, took off her clothes and raped her. According to S.J., this pattern of sexual abuse continued weekly for the next four years. S.J. testified that, in the beginning, she tried to fight against defendant, but “toward the end, [she] just gave up because [she] didn’t see ... the use of fighting.” S.J. testified that although most of the sexual abuse occurred when they livéd in the previous homes, defendant had raped her in the family’s current home in February or March 2014, when her son was conceived.
S.J. testified that she did not tell her mother about the sexual abuse until September 2014, and had told her friend and boyfriend only after she began to suspect that she was pregnant. S.J. testified that her mother took her to visit defendant in 2012 when he was in prison. She recalled that there was a period Of time when defendant' traveled to a job during the week, but he came home each weekend. S.J. explained that she would act normal and “comfortable” around defendant when they were with other members of her family because she knew she was safe at those times. S.J. also, acknowledged that her mother had asked her if anything was going on between her and defendant, but she denied there were any issues.
14Janet Devereaux, who was accepted as an expert sexual assault nurse examiner, testified that in most • cases in which a minor is the victim, there are no medical or physical signs of sexual abuse. Dever-eaux explained that it is á normal occurrence for a child not to disclose incidents *498 of sexual abuse until he or she becomes an adult or is forced to disclose the abuse by a questioning parent or another concerned adult.
After being re-called as a witness by the defense, Olivia Jones testified that S.J. had told her about defendant’s threat that if S.J. said anything about his acts, then he would leave and the family would be without money and a home. Jones stated that she did. not understand why this threat concerned S.J., because she knew that Jones had an income and could provide for S.J. and her sisters. Jones, testified that she took her three daughters to visit defendant every week when he was in jail in 2012 and that her daughters went willingly with her on those visits. Jones admitted that she never had a conversation with S.J. about the family’s finances and never told S.J. who paid for groceries or rent.
The defendant’s mother, Blanche Busse, testified that she never noticed anything “peculiar” between defendant and S.J. and the two..of them acted as if they had a normal . father-daughter relationship. Busse stated that she thought S.J. just did not like her mother. Busse testified that S.J. never behaved as if she was being molested by defendant, but admitted that she had no training to detect when a child was being molested.
Defendant's sister, Linda Duncan, testified that S.J. had told her that defendant had not threatened or 'forced her to have sex with him, but that the | ^sexual conduct had occurred more than once when defendant was drunk. Duncan testified that she believed that S.J. - was lying and that if defendant had truly sexually molested her, S.J. would have told someone.- Duncan, however, conceded that she had no training in child psychology and that her interpretation 'of S.J.’s conduct was her own opinion.
The defendant, Rodney Lewis, testified that he had been Jones’ boyfriend for over seven years, and started living with her and her three daughters when S.J. was approximately nine years old. Defendant stated that he wrote the letter to the prosecution and wanted to testify in order to “clear his name.” Defendant admitted to having sexual intercourse with S.J., but denied having any type of inappropriate sexual contact with her until she was over the age of 13. According to defendant, the first time he and S.J. had sexual intercourse was in December 2012 or January 2013, after he was released from jail. He testified that on the day he was released from jail, S.J. gave him a hug. Defendant admitted to having sexual intercourse with S.J. on more than one occasion. He further admitted that having sex with a 13-year-old was wrong, but claimed that S.J. had .initiated the sexual contact with him each time. Defendant asserted that S.J. had taken advantage of his drug and alcohol problem and that he stopped having sex with S.J. when he quit drinking and doing drugs in early 2014.
At the close of the trial, the jury found defendant guilty of aggravated' rape and molestation of a juvenile. Thereafter, defendant was adjudicated a third-felony offender. The trial court sentenced defendant to serve a term of life imprisonment without the benefit of parole, probation or suspension of ^sentence for each conviction. The sentences were ordered to run concurrently.. This appeal followed.
DISCUSSION
The defendant contends the evidence presented was insufficient to support the conviction of aggravated rape. Defendant argues that the state failed to prove beyond a reasonable doubt that S.J. was under the age of 13 when the sexual abuse occurred.
*499 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact.could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in LSA-C.Cr,P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in. the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence 17must be sufficient for a rational trier of. fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App.2d Cir.5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. ' Likewise, the sole testimony of a sexual assault victim is sufficient to support a requisite factual finding. State v. Demery, 49,732 (La.App.2d Cir.5/20/15), 165 So.3d 1175, citing State v. Watson, 32,203 (La.App.2d Cir.8/18/99), 743 So.2d. 239, writ denied, 99-3014 (La.3/31/00), 759 So.2d 69, Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678.
Where there is conflicting testimony about factual matters, thé resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02); 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). The appellate court does hot assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
The trier of fact is charged by the court to make a credibility determination and may,.within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due *500 process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). Credibility determinations are the province of the trier of fact. State v. Johnson, 38,927 (La.App.2d Cir.11/23/04), 887 So.2d 751.
Pursuant to LSA-R.S. 14:41, rape is defined as the act of anal, oral or vaginal sexual intercourse with a person committed without the person’s lawful consent. LSA-R.S. 14:42 provides in pertinent part:
■ Aggravated rape is a rape committed ... where the anal, oral or sexual intercourse is deemed to be without lawful consent of the victim because it is committed!;] When the victim is under the age of thirteen years.
In order to convict a defendant of aggravated rape of a child under the age of 13, the state must prove beyond a reasonable doubt that (1) the defendant engaged in anal, oral, or vaginal intercourse deemed to be without consent of the victim because (2) the victim was less than 13 years of age at the time of'the rape. State v. Ricks, 49,609 (La.App.2d Cir.1/14/15), 194 So.3d 614.
|aThe record shows that the state presented sufficient evidence at trial to convict defendant of aggravated rape. S.J. testified that defendant began sexually abusing her when she was 11 years old and that he continued this sexual abuse until January or February 2014. Defendant does not dispute the fact that S.J. was born in 1999. S.J.’s mother corroborated her daughter’s testimony insofar as Jones testified that she was told by S.J. that defendant had been sexually abusing her since she was 11 years old. Despite S.J.’s inability to recall specific dates, S.J. described, in detail, the first occasion when she was sexually violated by defendant in her mother’s bedroom of their previous home. Her testimony, when believed by the trier of fact, is sufficient to prove the defendant’s commission of the crime.
Additionally, defendant confessed to having sexual intercourse with S.J. on multiple occasions, although he denied that the sexual abuse occurred before she was 13 years old. The lack of medical or physical evidence that defendant had been sexually abusing S.J. when she was under the age of 13 is consistent with Devereaux’s testimony that most often a minor will not exhibit any physical or emotional signs of sexual abuse.
The defense presented the testimony of defendant, Duncan and Busse to suggest that S.J. accused him of having sex with her before she was 13 years old in order to punish him for terminating their relationship or to punish Jones for not being involved enough in S.J.’s life. However, the jury reasonably discredited the testimony of those witnesses.
The factual situation in this case is similar to that of State v. Ricks, supra. In that case, Ricks was convicted of four counts of aggravated rape. ImThis court affirmed the convictions, noting that the jury had obviously found the victim’s testimony to be credible. Here, as in Ricks, the jury found the victim, S.J., to be a credible witness and reasonably accepted her testimony over that of the defendant. Thus, after reviewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found that the state proved beyond a reasonable doubt all of the elements of the crime of aggravated rape in this case. Accordingly, the assignment of error lacks merit.

Error Patent

A review of the record shows that the trial court did not properly inform the defendant of the sex offender notification and registration requirements outlined in LSA-R.S. 15:542-543.1. At all relevant *501 times, molestation of a juvenile has been defined as a sex offense by LSA-R.S. 15:541. There being no indication in the record as to whether defendant is aware of the sex offender registration requirements, we remand this matter to the district court for the purpose of providing the appropriate written notice to the defendant of the sex offender registration requirements and for the filing of written proof of such notice in the record of the proceedings. State v. Williams, 49,249 (La.App.2d Cir.10/1/14), 149 So.3d 462, writ denied, 2014-2130 (La.5/22/15), 173 So.3d 1167; State v. Scott, 42,997 (La.App.2d Cir.2/13/08), 975 So.2d 782.
CONCLUSION
For the foregoing reasons, the defendant’s convictions and sentences are affirmed. This matter is remanded to the district court with instructions | uto provide the defendant with appropriate written notice of his sex offender registration obligations in compliance with LSA-R.S. 15:542-543.1 and for the filing of written proof thereof in the record.
AFFIRMED; REMANDED WITH INSTRUCTIONS.

. Because this case involves a juvenile victim, only her initials will be used in this opinion. LSA-R.S. 46:1844(W)(3).