Judgment rendered March 3, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,643-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

STEVE ROBERT RANNEY                         Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 338,614

Honorable Charles Gordon Tutt, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

KODIE K. SMITH
ALEX L. PORUBSKY
MALLORY RICHARD
Assistant District Attorneys

* * * * *

Before GARRETT, STONE, and COX, JJ.

**COX, J.**

This criminal appeal arises from the First Judicial District Court, Caddo Parish, Louisiana. Following a unanimous jury verdict, defendant, Steve Robert Ranney ("Mr. Ranney"), was convicted of one count of indecent behavior with a juvenile, in violation of La. R.S. 14:81 and sentenced to four years without hard labor. No motion to reconsider sentence was filed after trial.

On appeal, Mr. Ranney presents two assignments of error; first, that the evidence adduced at trial was insufficient to support his conviction beyond a reasonable doubt and second, given the particular facts and circumstances of this case, the imposition of a four-year sentence is unconstitutionally harsh and excessive. For the following reasons, we affirm his conviction and sentence.

## FACTS

On February 29, 2016, Mr. Ranney was charged by bill of information with molestation of a juvenile in violation of La. R.S. 14:81.2; the charge was later amended to indecent behavior with a juvenile and specified the date of the offense as November 13, 2015, at which time Mr. Ranney was 35 years old and, the victim, L.H., was 14.[1] Prior to trial, Mr. Ranney, as a pro-se litigant, filed a motion to suppress L.H.'s Gingerbread House video interview[2] ("the interview"); the motion was denied and a jury

---

[1] At trial, L.H. testified that her birth date is October 17, 2001.

[2] The Gingerbread House interview was conducted by Jennifer Flippo ("Ms. Flippo"), a forensic interviewer, on November 25, 2015. Ms. Flippo has been employed by the Gingerbread House from 1999 until 2017. She has a Bachelor's and Master's degree in psychology and has conducted approximately 3,000 interviews during her employment. Ms. Flippo testified that the interviews are conducted voluntarily and there are no relatives or attorneys present in the room. The interviews are unscripted, recorded, and supervised by law enforcement from an adjacent room.

trial commenced on October 9, 2019, where the interview was played in its entirety to the jury.

During the interview, L.H. explained how she first became acquainted with Mr. Ranney and detailed the events which led to the incident in question. First, L.H. stated that she knew Mr. Ranney because he was the biological father of her half-sister, B.B., and that she would occasionally see him when she accompanied B.B. on visits to his home. L.H. then testified that after Mr. Ranney took her and B.B. on a vacation to Hot Springs, Arkansas, in October of 2015, he began to call and text her almost every day. When Mr. Ranney contacted L.H. during this time, he would persuade L.H. to speak with him about anything, would express his desires to be intimately involved with her, promised to marry her when she turned eighteen, and indicated that he was in the process of purchasing an engagement ring for her.

Next, L.H. testified that one week before the incident, Mr. Ranney convinced her to sneak out of her house and meet him at her school's parking lot. L.H. met with him where the two sat in Mr. Ranney's truck and kissed. On the morning of November 13, 2015, when L.H. arrived at school, Mr. Ranney once again asked L.H. to meet him in the school's parking lot. When Mr. Ranney arrived, L.H. got into the vehicle and the pair hugged and kissed. Mr. Ranney expressed how much he missed her, then proceeded to drive L.H. from her school in DeSoto Parish to at least two stores in Caddo Parish, namely Burlington Coat Factory and Wal-Mart, to purchase items for one of the rental properties Mr. Ranney owned in Shreveport.

L.H. stated when they arrived at the rental home, she helped Mr. Ranney put the items away, which included putting sheets on one of the

beds. L.H. then testified that at this time, Mr. Ranney kissed her and then laid her down on the bed where he then touched and rubbed her private area over her clothing. Mr. Ranney attempted to remove L.H.'s belt twice, but each time, she stopped him. At some point after this event, L.H. stated she was afraid and wanted to return to school because she received several text and phone calls from her family asking where she was. Mr. Ranney then drove L.H. back to DeSoto Parish and dropped her off on Horn Road because there were several officers at the school looking for her. Once Mr. Ranney left, L.H. contacted her mother, C.B., and stepfather, who took her to the police station.

In Mr. Ranney's interview with Detective De'Andre Belle ("Detective Belle") of the Shreveport Police Department's sex crime unit, which was videotaped and played before the jury in its entirety, he testified that although he picked L.H. up from school on November 13, nothing further occurred between the two. Instead, Mr. Ranney stated that he only drove L.H. to several stores, including Starbucks, Burlington Coat Factory, Wal-Mart, and Time-it-Lube, and that L.H. never entered his rental property because she received several messages and phone calls inquiring about her location. Mr. Ranney then stated that L.H. refused to be dropped off at the school, and instead called a friend to meet her at a store somewhere in DeSoto Parish, where he observed L.H. get inside a new Camaro.

Mr. Ranney acknowledged that he had intentions of marrying L.H. when she turned eighteen and that he knew he could not be intimate with her until she did. Mr. Ranney admitted that he flirted with L.H. through text messages and that he should not kiss 14-year-olds and would even "do something" if someone did the same to his own daughter. During the

3

interview, Mr. Ranney opined that he believed C.B. wanted to ruin his life to the extent that when she took L.H. to the police station, she threatened to cut her hair off, and has even threatened his wife with child protective service allegations. Mr. Ranney stated that he believed that these were the reasons which resulted in this current situation.

The State then called several witnesses who each corroborated L.H.'s testimony. First, B.B. testified that although she and L.H. arrived at school together on the bus, she learned that L.H. was absent from her previous classes. B.B. then stated that she called C.B. to inform her that L.H. was not in school. She then made several attempts to contact L.H. herself, and even tried to track L.H.'s location, but discovered that L.H.'s phone was turned off; she later learned that L.H. had been with Mr. Ranney at his rental home.

Corporal Eli Travis, of the Uniform Service division of the Shreveport Police Department, then testified that on the same day, he was called to Ochsner Hospital to report a sexual assault. Corporal Travis stated that he was informed by C.B. that Mr. Ranney picked L.H. up from school, took her shopping in Shreveport, and then back to his rental home, where he then "felt [L.H.'s] body from her clothing."

Detective Belle testified that he first became involved with the case on November 26, 2015. On January 11, 2016, Detective Belle interviewed Mr. Ranney, and from that interview, he determined that Mr. Ranney: (1) texted L.H. on a regular basis since October 2015, (2) took L.H. from school on November 13th without C.B.'s authorization, (3) purchased items from several stores and then took those items to his rental home where he then kissed L.H., and (4) that on at least two prior occasions, he kissed L.H. in the

4

school parking lot.  Following Detective Belle's testimony, the State rested and Mr. Ranney introduced his witnesses.

Mark Ranney, Mr. Ranney's father, testified that during the time in which the offense occurred, Mr. Ranney was enrolled in school full time at Bossier Parish Community College, owned his own real estate business, lived with three of his children, and was in a "toxic" relationship, which, he believed took a toll on Mr. Ranney's judgment, state of mind, and relationship with others.  Mark Ranney testified further that his son has had issues with alcohol and drugs.  On cross-examination, however, Mark Ranney admitted that there was no excuse for Mr. Ranney to remove L.H. from school.  After his father's testimony, Mr. Ranney re-called Detective Belle, who stated that there was no DNA evidence collected which would verify the validity of the allegation made against Mr. Ranney as officers in his department do not collect clothing for evidence in cases in which there has been no allegation of sexual intercourse.

At the trial's conclusion, the jury unanimously found Mr. Ranney guilty as charged.  Following the verdict, on November 7, Mr. Ranney filed a motion to arrest judgment which was denied the same day.  However, sentencing was delayed to the following day.  At the hearing, C.B. expressed that her family underwent counseling since the incident and have had several financial burdens as a result of Mr. Ranney's actions.  In turn, Mr. Ranney once again called Mark Ranney, who testified that Mr. Ranney should be placed in inpatient psychiatric treatment as Mr. Ranney was placed in a psychiatric facility when he was 14, which altered his state of mind, and that he believed that his son may be bipolar.

Mr. Ranney's minister, Jacob Pinchera, stated that Mr. Ranney has repented and tried to change his life. Mr. Ranney's mother, Elizabeth Riviere, also testified that her son was remorseful and simply "got off track," and still had a lot to offer. Finally, on his own behalf, Mr. Ranney apologized to C.B., B.B., and his parents; however, the court took notice that Mr. Ranney never admitted to the crime itself. After review of the letters submitted on Mr. Ranney's behalf, the court stated that the evidence was clear: Mr. Ranney took a 14-year-old child from school in DeSoto Parish to one of his rental homes in Shreveport, where he then touched her private area and attempted to remove her clothes.

Therefore, in accordance with La. C.Cr. P. art 894.1, the trial court found that there was an undue risk that Mr. Ranney would commit another crime during a suspended sentence and probation, that Mr. Ranney needed correctional treatment or a custodial environment, and a lesser sentence would deprecate the seriousness of the crime. Specifically, the trial judge stated that a sentence which did not require incarceration, would be a "slap in the face" to the victim. Accordingly, Mr. Ranney was sentenced to four years without hard labor and was recommended for mental health and drug and alcohol programs within the Department of Corrections. Mr. Ranney now appeals.

## DISCUSSION

*Insufficiency of the Evidence*

In Mr. Ranney's first assignment of error, he asserts that there was insufficient evidence presented at trial to prove beyond a reasonable doubt that he was guilty of the offense in question. Mr. Ranney argues that L.H.'s testimony alone does not sufficiently support his conviction; therefore, the

6

jury's guilty verdict is contrary to the law and the evidence presented at trial. Mr. Ranney asserts that L.H. made several false statements, notably that L.H. denied that: (1) she went with him to Time-it-Lube, (2) she communicated with another person that day while she was present with Mr. Ranney, (3) she had a friend pick her up at a store in DeSoto Parish after she received several text messages and phone calls, and (4) her mother threatened her when she was brought to the police station on November 13.

Mr. Ranney argues that the rental home was never searched to determine if L.H. was ever present there, nor did Detective Belle verify whether Mr. Ranney actually took L.H. to the Time-it-Lube by requesting surveillance tapes from that day. Further, Mr. Ranney argues that the detectives failed to submit the forensic and cyber report on L.H.'s phone to establish her call history from the date in question. For these reasons, Mr. Ranney argues that the State failed to prove his guilt beyond a reasonable doubt and his conviction should be reversed.

The State maintains that the evidence was sufficient to convict Mr. Ranney of indecent behavior with a juvenile. The State argues that Mr. Ranney's first assignment of error is merely an attack on L.H.'s credibility rather than the actual evidence produced at trial. In particular, the State asserts that L.H.'s testimony in addition to Mr. Ranney's own admissions that he kissed L.H. on more than one occasion, admitted that he was in love with L.H., despite her minority, planned to marry her, and admitted to removing L.H. from school without authorization from C.B. established Mr. Ranney's guilt beyond a reasonable doubt. The State notes that the jury deemed that L.H. was a credible witness.

7

The standard of appellate review for a sufficiency of the evidence claim in a criminal case is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 05/20/03), 851 So. 2d 921, *cert denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). The *Jackson* standard, now legislatively embodied in La. C. Cr. P. art 821, does not afford the appellate court with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 02/22/06), 922 So. 2d 517; *State v. Steines*, 51, 698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797.

The *Jackson* standard also applies in cases involving both direct and circumstantial evidence. An appellate court which reviews the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is viewed as such, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

Likewise, if a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *see also*, *State v. Mingo*, 51, 647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. The appellate court will review the evidence in the light most favorable to the prosecution

8

and determine whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So. 3d 417; *State v. Garner*, 45,474 (La. App. 2 Cir. 8/18/10), 47 So. 3d 584, *writ not considered*, 12-0062 (La. 4/20/12), 85 So. 3d 1256.

In the absence of any internal contradiction or irreconcilable conflict with physical evidence, the testimony of the witness, if believed by the trier of fact, alone, is sufficient support for a requisite factual conclusion. *State v. Elkins*, 48,972 (La. App. 2 Cir. 04/9/14), 138 So. 3d 769, *writ denied*, 14-0992 (La. 12/8/14), 152 So. 3d 438; *State v. Wiltcher*, 41,981 (La. App. 2 Cir. 05/09/07), 956 So. 2d 769. Similarly, the sole testimony of a sexual assault victim is sufficient to support a requisite factual finding. *State v. Elkins*, *supra*; *State v. Lewis*, 50,546 (La. App. 2 Cir. 05/04/16), 195 So. 3d 495. Such testimony alone is sufficient even if the State fails to introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. *Elkins, supra*.; *State v. Ponsell*, 33,543 (La. App. 2 Cir. 08/23/00), 766 So. 2d 678.

Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36, 180 (La. App. 2 Cir. 09/18/02), 828 So. 2d 622, *writ denied*, 02-2595 (La. 06/27/03), 847 So. 2d 1255. The appellate court neither assesses the credibility of witnesses nor reweighs evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, the reviewing court affords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La.

App. 2 Cir. 08/30/03), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422.

In the present case, after viewing the evidence in the light most favorable to the State, we find that the evidence produced at trial was sufficient to convict Mr. Ranney of the charged offense. Here, Mr. Ranney was charged with Indecent Behavior with a Juvenile in accordance with La. R.S. 14:81, which states in pertinent part:

> A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
> (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense.

First, we note that at the time of the offense, Mr. Ranney was 35 years old and the victim, L.H., was only 14. Further, L.H. testified that since October of 2015, Mr. Ranney contacted her almost every day, indicating that he loved her and even wanted to marry her at some point in the future, and on November 13, he convinced her to leave school to be with him. L.H. stated that Mr. Ranney drove her to several stores to purchase items for his rental property. Although Mr. Ranney admits that he took L.H. from school without authorization from C.B. to do so, he denies that he took L.H. inside the rental property, there is an absence of evidence disputing L.H.'s claims as the record does not include forensic and cyber reports of L.H.'s phone records and a receipt from Mr. Ranney's alleged trip to Time-it-Lube. Moreover, such facts are inconsequential in light of Mr. Ranney's own admissions of remorse as well as his testimony that he flirted with, kissed, and persuaded L.H. to sneak out of her home to see him on more than one

10

occasion prior to the incident.  We find that, in the absence of any internal contradiction or irreconcilable conflict with the physical evidence, L.H.'s testimony, as believed by the trier of fact, was sufficient to support a factual conclusion of Mr. Ranney's guilt beyond a reasonable doubt.

*Excessive Sentence*

In Mr. Ranney's second assignment of error, he argues that the imposition of a four-year sentence is unconstitutionally harsh and excessive as the facts of this case do not present the worst of offenses.  Mr. Ranney contends that his rehabilitation and incarceration would make no measurable contribution to either himself or society as several witnesses attested to his promising work history and he has since shown remorse.  The State, in turn, argues that Mr. Ranney was given a midrange sentence which appropriately reflects the severity of the offense.

Appellate review of sentences for excessiveness is a two-prong inquiry.  However, in the present case, no motion to reconsider sentence was filed.  When a defendant fails to file a timely motion to reconsider sentence, the appellate court's review of a sentencing claim is limited to constitutional excessiveness.  *State v. Mims*, 619 So. 2d 1059 (La. 1993); *State v. Jones*, 41,449 (La. App. 2 Cir. 9/20/06), 940 So. 2d 61; *State v. Duncan*, 30,453 (La. App. 2 Cir. 2/25/98), 707 So. 2d 164.  A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.  *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Mandigo*, 48,801 (La. App. 2 Cir. 2/26/14), 136 So. 3d 292, *writ denied*, 14-0630 (La. 10/24/14), 151 So. 3d 600.  A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of

11

the harm done to society, it shocks the sense of justice. *State v. Weaver*, 2001-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Hollins*, 50,069 (La. App. 2 Cir. 8/12/15), 174 So. 3d 710.

A trial court maintains wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of such discretion, a sentence will not be set aside as excessive. Upon review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Davis*, 50, 149 (La. App. 2 Cir. 11/18/15), 181 So. 3d 200; *State v. Weaver*, *supra*. Persons convicted of the crime of Indecent Behavior with a Juvenile shall be fined not more than $5,000 or imprisoned with or without hard labor for not more than seven years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893. *See*, La. R.S. 14:81(A)(1).

Here, the record reflects that the sentencing court appropriately sentenced Mr. Ranney. His sentence is neither illegal, nor grossly disproportionate to the severity of the offense. At trial, the court considered the testimony presented on Mr. Ranney's behalf and weighed this information against Mr. Ranney's own testimony that he knew L.H. was only 14 years old, that he kissed and intended to marry her, and enticed her into leaving school, as well as L.H.'s testimony that Mr. Ranney inappropriately touched her body in the confines of his rental home. The trial court also noted that although Mr. Ranney and his witnesses attested to his remorse, he maintained his innocence throughout the course of the trial.

Given that Mr. Ranney received a midrange sentence without the imposition of hard labor, we find that his sentence complies with the statutory guidelines and note that the trial court recommended that Mr. Ranney be placed in mental health and drug and alcohol programs while incarcerated to address his substance abuse and mental health concerns.

## CONCLUSION

For the aforementioned reasons, Mr. Ranney's conviction and sentenced are affirmed.

**AFFIRMED.**