BROWN, C.J.
*238 Defendant, Latilo Omar Lewis, was convicted of first degree rape, attempted second degree murder, second degree kidnapping, and simple robbery. He was sentenced to life imprisonment at hard labor without benefits for rape, 50 years at hard labor for attempted murder, 40 years at hard labor for kidnapping, and seven years at hard labor for robbery. Defendant has appealed his convictions and sentences. For the following reasons, we affirm all of defendant's convictions and his sentences for first degree rape, attempted second degree murder, and simple robbery. However, defendant's sentence for second degree kidnapping is vacated and remanded to the trial court for resentencing. This case is also remanded to the trial court for correction of the court minutes and compliance with the sex offender notification requirements.
FACTS
Defendant's four-day trial began on October 10, 2016. Tensas Parish Sheriff Ricky Jones testified that around 2:22 p.m. on November 6, 2015, N.H. frantically ran into the sheriff's office barefoot, wearing a pink nightgown and black jogging pants. According to Sheriff Jones and Deputy Betty Spillman Brown, N.H. was hysterical; she was crying and could barely talk. The officers observed noticeable bruises on N.H.'s face, neck and arms and saw that she had bloodshot eyes. N.H. reported that a man who said that his name was Marcus Brown had forced himself into her home that morning, tied her up and sexually assaulted her all day. When he went into another room, she was able to get loose, get her gun, and shoot him when he returned to the room. Three minutes later, at 2:25 p.m., defendant, Latilo Lewis, called 911 from N.H.'s home and advised that he had been shot.
When officers arrived at N.H.'s house, which was about three blocks from the sheriff's office, they found defendant sitting in a chair in the living room. Defendant had a perforating bullet wound to his upper right abdomen. Paramedic Johnny Ogden determined that defendant's injury was critical, and defendant was airlifted to the University of Mississippi Medical Center in Jackson, Mississippi.
Sheriff Jones testified that the officers went past defendant into N.H.'s bedroom, where they observed her disheveled bed and drawers pulled out. The sheriff took photographs of the scene, as did Investigator Mark Guy and Deputy Bob Stroud. Sheriff Jones testified that they found one live round and one spent round on the victim's bed, as well as a projectile on the floor. He stated that, despite an extensive search for N.H.'s gun, a .380 automatic, officers were unable to locate the weapon. Deputy Evelyn Guy took photographs of N.H.'s injuries at the sheriff's office. Sheriff Jones identified the photos taken during the investigation during his trial testimony.
Sheriff Jones testified that, during the course of the investigation, N.H. told officers that there was $500-$600 missing from her purse. Deputy Stroud contacted authorities at the University Medical Center in Jackson, who found $567 in defendant's possession.
St. Joseph Police Chief Karl Jones also responded to the 911 call made from N.H.'s house and was there when paramedics *239 arrived. Chief Jones saw the very distraught victim when he went to the sheriff's office/jail. According to Chief Jones, N.H. was crying uncontrollably and appeared to be in shock. He also noticed bruising at her neck and wrists. Chief Jones testified that the victim's brother called him on November 7 and asked whether officers had found any money on defendant because N.H. was missing $500-$600, which she had collected for a church function. Chief Jones stated that he and his department participated in the search for the victim's gun, which went on for several days.
N.H. testified that around 7:30 a.m. on November 6, 2015, she opened her front door to check the weather so she would know what to wear that day. When she saw that there was a man crouched down on her porch "like a lion getting ready to pounce on his prey," she tried to close the door, but he forced or "barged" his way into her house. The man grabbed N.H., threw her on the floor and told her to put her hands behind her back. N.H. refused and fought back, but the man choked her and she lost consciousness. When N.H. woke up, her hands were tied behind her back. The man pushed N.H. into her bedroom and repeatedly raped her as she begged for him to stop. Over the course of about seven hours, the man continued to rape N.H. as she was tied to the head of her bed with a belt. N.H. stated that at one point, the man took money (around $500-$600) from her purse which she had been saving for her church anniversary. N.H. detailed several conversations she had with the man, including the fact that the man told her his name was Marcus Brown.
At one point, the man told her that he was hungry and went into the kitchen, leaving N.H. tied to the bed. N.H. was able to loosen herself and get her gun out of a filing cabinet she used as a nightstand located next to the bed. When the man came back into the bedroom, N.H. was standing on the bed with the gun pointed at him. N.H. told the man to leave, but he came closer, so she shot him. Although he was shot, the man lunged at N.H. and wrestled the gun out of her hand. N.H. testified that the man put the gun to her head and said, "Now bitch, you'll know what it feels like to be shot." The man pulled the trigger, but the gun jammed. Another struggle ensued, and the man tied N.H. to the bed again. She was eventually able to convince the man to untie her so she could get him medical attention. N.H. left the house and drove straight to the sheriff's office. N.H. identified defendant as the man who repeatedly raped and tried to kill her.
Investigator Michael Huff with the Hinds County Sheriff's Department in Jackson, Mississippi, assisted in the investigation of this case by obtaining search warrants and collecting evidence from defendant while he was in the hospital in Mississippi. On November 6, 2015, Huff obtained a search warrant for defendant's clothing and a DNA sample. Thereafter, once he received information that defendant allegedly took money from N.H. during the incident, on November 25, 2015, Huff obtained a second search warrant for all property possessed by defendant at the time of his admission to the hospital. As a result, $557 was recovered from defendant.
In a recorded interview, defendant told officers that he was in a relationship with N.H., which no one else knew about. On the day of the incident, defendant said that he was spending time with the victim, they had consensual sex one time, and then N.H. started acting weird and shot him. Defendant stated that the money found in his belongings was money he got from selling weed. Defendant denied raping *240 N.H. or putting the gun to her head. Defendant's statement that he was in a relationship with N.H. was not corroborated.
After the incident, N.H. was taken to Riverland Medical Center for a sexual assault examination. Dr. Rome Sherrod, who collected evidence for the rape kit, testified that N.H. had bruising on her neck and wrists consistent with being restrained, as well as swelling and abrasions to her vagina, which were consistent with forced or violent sexual activity. Dr. Jessica Esparza, an expert in forensic DNA analysis, testified that she conducted DNA testing of the items in the rape kit and the DNA profile obtained from the sperm from the vaginal swab, cervical swab, and vaginal washings. Dr. Esparza testified that the DNA profile found on the items in the rape kit was consistent with the DNA profile obtained from defendant's reference sample. According to Dr. Esparza, the probability of finding the same DNA profile in a randomly selected person other than defendant was one in 6.11 quadrillion, which is more than the earth's population.
After all of the testimony and evidence was presented, on the final day of the four-day trial, defendant managed to escape from his jailers as they were escorting him to the courthouse from the jail, which is directly behind the courthouse. Outside the presence of the jury, the trial judge noted that defendant was still on the loose, and it had come to the judge's attention that some of the jurors, who had been looking out the windows in the jury room, observed defendant as he was running. Defense counsel moved for a mistrial, arguing that defendant was prejudiced when the jurors saw him in police custody being escorted by two guards and possibly witnessed his escape, and that proceeding with the trial in defendant's absence was in violation of his right to be present. The trial court denied the motion for mistrial, noting that the jurors saw defendant in custody of law enforcement officers in the courtroom all week and the court took "great pains" to ensure that defendant was in neat, clean, civilian clothing, and that the only restraints he had on, which were on his legs, allowed him to walk with little difficulty. Also, the trial court found that because defendant had voluntarily absented himself, the trial could proceed without his presence. Defense counsel requested that the jurors be gauged to determine if they could still be fair and impartial, but the court stated that it only intended to tell the jury that Lewis had chosen not to be present for the remainder of the proceedings and "leave it at that." The trial court did so, and the trial resumed.
The jury ultimately found defendant guilty as charged of first degree rape, guilty of the responsive verdict of attempted second degree murder, guilty as charged of second degree kidnapping, and guilty of the responsive verdict of simple robbery. Although his attorney was present, defendant was not present at trial for the closing arguments, jury instructions, or the reading of the jury's verdict.
The defense filed a motion for post-verdict judgment of acquittal, arguing that the evidence was insufficient, and a motion for new trial, based on the denial of certain objections to testimony during trial. At a hearing on October 26, 2016, the trial court denied the post-trial motions.
Defendant waived sentencing delays. After reviewing the pre-sentence investigation report, the trial court sentenced defendant as follows: life imprisonment at hard labor without benefits for first degree rape; 50 years at hard labor without benefits for attempted second degree murder; 40 years at hard labor, with at least two years without benefits for second degree kidnapping; and seven years at hard labor *241 for simple robbery. The trial court ordered the sentences to be served concurrently.
Defendant filed a motion to reconsider sentence, arguing that his sentences were excessive since he received the maximum sentence for each offense. The trial court denied the motion at a hearing on December 1, 2016. This appeal followed.
DISCUSSION
Sufficiency of the Evidence
Although not specifically designated as an assigned error, in the closing section of his pro se brief, defendant contends that the evidence was insufficient to support his convictions. According to defendant, the state's case against him was based on circumstantial evidence and rested solely on the victim's account of the events. Defendant claims that the facts of this case are "shady" and that it is hard to imagine how he was able to take the gun from N.H. and attempt to shoot her after she shot him, or that he would have had time, in the span of three minutes, to hide the gun and take N.H.'s money from her purse.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979) ; State v. Tate , 01-1658 (La. 05/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed. 2d 248 (2004) ; State v. Sullivan , 51,180 (La. App. 2 Cir. 02/15/17), 216 So.3d 175. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Pigford , 05-0477 (La. 02/22/06), 922 So.2d 517 ; State v. Dotie , 43,819 (La. App. 2 Cir. 01/14/09), 1 So.3d 833, writ denied , 09-0310 (La. 11/06/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to the factfinder's decision to accept or reject the testimony of a witness in whole or in part. State v. Sullivan , supra .
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. State v. Lilly , 468 So.2d 1154 (La. 1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. This rule applies equally to the testimony of victims of sexual assault. Such testimony alone is sufficient, even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Lewis , 50,546 (La. App. 2 Cir. 05/4/16), 195 So.3d 495, writ denied , 16-1052 (La. 05/1/17), 219 So.3d 330 ; State v. Joyner , 50,740 (La. App. 2 Cir. 06/22/16), 197 So.3d 724, writ denied , 16-1493 (La. 06/16/17), 219 So.3d 1111.
First Degree Rape
La. R.S. 14:41 provides, in part:
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
*242 B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
La. R.S. 14:42 provides, in part:
A. First degree rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1)When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
Attempted Second Degree Murder
Second degree murder is the killing of a human being when, among other things, the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27(A).
To obtain a conviction for attempted second degree murder, the state must prove the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death. State v. Bishop , 01-2548 (La. 01/14/03), 835 So.2d 434. Attempted second degree murder requires proof of specific intent to kill; proof of specific intent to inflict great bodily harm is insufficient. State v. Jones , 49,396 (La. App. 2 Cir. 11/19/14), 152 So.3d 235, writ denied , 14-2631 (La. 09/25/15), 178 So.3d 565.
Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). As a state of mind, specific intent need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendant. State v. Mickelson , 12-2539 (La. 09/3/14), 149 So.3d 178 ; State v. Walker , 51,217 (La. App. 2 Cir. 05/17/17), 221 So.3d 951. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Lloyd , 48,914 (La. App. 2 Cir. 01/14/15), 161 So.3d 879, writ denied , 15-0307 (La. 11/30/15), 184 So.3d 33, cert. denied , --- U.S. ----, 137 S.Ct. 227, 196 L.Ed.2d 175 (2016). The determination of whether the requisite intent is present is a question for the trier of fact. Id. ; State v. Walker , supra .
Second Degree Kidnapping
Under La. R.S. 14:44.1, second degree kidnapping is the imprisoning or forcible secreting of any person, wherein the victim is physically injured or sexually abused.
Simple Robbery
La. R.S. 14:65 defines simple robbery as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon. See State v. Mason , 403 So.2d 701 (La. 1981) (acts of violence or intimidation need not be done for the very purpose of taking the victim's property; rather, it is enough that he takes advantage of a situation which resulted from the prior use of force or intimidation;
*243 in that case, an aborted rape attempt).
The evidence presented at trial was sufficient to support all of defendant's convictions. N.H. testified that, after defendant forced his way into her house, he choked her, rendering her unconscious. Defendant tied N.H.'s arms to the head of her bed, and over the course of about seven hours, defendant repeatedly raped N.H. as she begged for him to stop. This testimony established that defendant engaged in vaginal sexual intercourse with N.H. without her consent, and that Lewis restricted N.H's movements and imprisoned her in her own house.
The jury found N.H.'s testimony credible, and her testimony alone was sufficient to convict defendant of first degree rape and second degree kidnapping. As noted above, this Court does not assess the credibility of witnesses or reweigh evidence. Defendant's argument that the state's case was based solely on N.H.'s testimony is without merit. Consistent with N.H.'s version of the events, several officers testified that N.H. had bruises on her neck and wrists. Also, defendant's DNA was found in several items from the rape kit performed on N.H. and the doctor that performed the sexual assault examination on N.H. testified that the bruising, swelling, and abrasions to N.H.'s vagina were consistent with forced sexual activity.
At trial, N.H. testified that after she shot defendant, he wrestled the gun out of her hand and said, "Now bitch, you'll know what it feels like to be shot," as he put the gun to her head and pulled the trigger. Fortunately, the gun jammed. Although no shots were actually fired by defendant, evidence that defendant pulled the trigger while he held the gun to N.H.'s head is sufficient to establish that he had the requisite intent to kill, and therefore, is sufficient to support his conviction for attempted second degree murder.
N.H. also testified that defendant took money from her purse during the incident. Pursuant to a search warrant, officers in Jackson, Mississippi, recovered $557 from defendant's personal belongings while he was in the hospital. This evidence is sufficient to support defendant's conviction for simple robbery.
Considering the evidence in a light most favorable to the prosecution, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that defendant was guilty of first degree rape, attempted second degree murder, second degree kidnapping, and simple robbery. This assignment of error is without merit.
Denial of Mistrial
The defense argues that the trial court should have granted a mistrial when the jurors saw defendant escape from custody on the last morning of trial. Noting that a defendant should not be seen shackled or handcuffed, defendant's attorney claims that this incident infringed upon defendant's presumption of innocence. The defense argues that this prejudicial conduct outside the courtroom, along with the fact that defendant was absent from the balance of the proceedings, denied defendant his right to a fair and impartial trial. Also, defendant's attorney complains that, although a request was made to gauge whether the jurors could still be impartial, the trial court declined to do so.
Regarding mistrials, La. C. Cr. P. art. 775 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
*244 Mistrial is a drastic remedy which is authorized only where substantial prejudice will otherwise result to the accused. State v. Roberson , 46,697 (La. App. 2 Cir. 12/14/11), 81 So.3d 911, writ denied , 12-0086 (La. 04/20/12), 85 So.3d 1270. The determination of whether actual prejudice has occurred lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. State v. Authier , 46,903 (La. App. 2 Cir. 4/25/12), 92 So.3d 494, writ denied , 12-1138 (La. 11/02/12), 99 So.3d 662.
Even if a mistrial was warranted, the failure to grant a mistrial would not result in an automatic reversal of the defendant's conviction, but would be a trial error subject to the harmless error analysis on appeal. State v. Givens , 99-3518 (La. 01/17/01), 776 So.2d 443 ; State v. Roberson , supra . Trial error is harmless where the verdict rendered is "surely unattributable to the error." State v. Wilson , 50,589 (La. App. 2 Cir. 05/18/16), 196 So.3d 614, writ denied , 16-1102 (La. 05/12/17), 221 So.3d 72.
A defendant cannot complain that prejudicial conduct requires a mistrial when the alleged prejudice stems from the defendant's own obstructive conduct which is met by a reasoned and ordered reaction by the trial court to maintain orderly procedure. State v. Tyler , 607 So.2d 910 (La. App. 2 Cir. 1992), writ denied , 612 So.2d 97 (La. 1993).
Absent exceptional circumstances, a defendant before the court should not be shackled, handcuffed, or garbed in any manner destructive of the presumption of innocence or detrimental to the dignity and impartiality of the judicial proceedings. State v. Odenbaugh , 10-0268 (La. 12/06/11), 82 So.3d 215. However, the momentary use of restraints for the limited purpose of transporting the accused does not mandate a mistrial. State v. Thornton , 36,757 (La. App. 2 Cir. 01/29/03), 836 So.2d 1235, writ denied , 03-0861 (La. 10/31/03), 857 So.2d 474 ; State v. Jones , 31,613 (La. App. 2 Cir. 04/01/99), 733 So.2d 127, writ denied , 99-1185 (La. 10/01/99), 748 So.2d 434.
La. C. Cr. P. art. 831 establishes a defendant's due process right to be present at every stage of the trial when his absence might frustrate the fairness of the proceeding. However, the provisions of La. C. Cr. P. art. 831 are not absolute. State v. Landrum , 35,053 (La. App. 2 Cir. 09/26/01), 796 So.2d 94, writ denied , 03-0493 (La. 02/20/04), 866 So.2d 823. La. C. Cr. P. art. 832 provides an exception for when the defendant voluntarily absents himself:
A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and:
(1) He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to be present during the trial[.]
Thus, under La. C. Cr. P. art. 832, a defendant may waive his right to be present by voluntarily absenting himself from the trial. In the case of a defendant who voluntarily absents himself from trial, the next inquiry is whether the defendant's attorney was present at every stage of the proceeding. If so, the defense attorney's presence is sufficient to satisfy the due process requirements of La. C. Cr. P. arts. 831 and 832. State v. Bolton , 408 So.2d 250 (La. 1981) ; State v. Landrum , supra .
*245 The trial court did not abuse its discretion in denying defendant's motion for mistrial or in continuing with the trial in defendant's absence. During the trial, defendant was not forced to wear prison attire, nor was he visibly restrained. Although several jurors may have seen defendant escape from the custody of his jailers as he was being transported to the courthouse, the use of restraints for the purpose of transporting the defendant does not require a mistrial. Defendant cannot complain of alleged prejudice arising from his own obstructive conduct.
Furthermore, because of his escape, defendant voluntarily absented himself from the courtroom, thereby waiving his right to be present for the conclusion of his trial. Defendant's attorney was present at all stages of the proceedings. There is no indication that defendant's absence from the trial for closing arguments, jury instructions, or the reading of the jury's verdict altered the outcome of the trial. This Court will not allow a defendant to manipulate and frustrate the speedy trial and prosecution of criminal cases by absenting himself from a trial which has already commenced whenever he chooses to do so. State v. Landrum, supra .
Defendant failed to demonstrate any prejudice arising from his escape or absence from the conclusion of trial. As noted above, the evidence presented at trial was sufficient to support defendant's convictions. This assignment of error is without merit.
Excessive Sentence
Noting that defendant received maximum sentences for each of his convictions, the defense contends that defendant's sentences are excessive, primarily because the trial court relied on defendant's criminal history and failed to consider the mitigating factors.
At the sentencing hearing, defendant made a brief statement, apologizing to everyone for his behavior. The victim, N.H., then made a statement, explaining that the rape, the attempt to kill her, and being held in her own house for over seven hours was "pure hell," which she relives every day. N.H. stated that she is scared to open her door or leave her house, and opined that defendant does not have respect for the law or others and is a definite harm to people in the community.
The trial court outlined the facts of this case, noting that defendant brutally raped N.H. numerous times over a period of several hours during which she was held hostage in her own home and tied to the bed. The trial court further noted that the gun fortunately jammed when defendant tried to shoot N.H. in the head, and that defendant robbed N.H. of $557. Also, the trial court noted that N.H. has required two hospitalizations as a direct result of this horrific crime, and continues to suffer debilitating mental and physical infirmities.
As to his personal history, the trial court noted that defendant has four children (ages 22, 17, 6, and 5) with three different mothers, and has had many seasonal jobs during his adult life. In addition, the trial court took note of defendant's long criminal history and classification as a fourth-felony offender. The trial court observed that defendant has a juvenile record[1] and has convictions for aggravated battery (reduced from attempted first degree murder), simple burglary, and unauthorized entry of an inhabited dwelling. The trial court also stated that defendant has numerous other misdemeanor convictions, and numerous charges against him have *246 been dismissed pursuant to plea agreements, many of these incidents having involved violent crimes against the person. The trial court further noted that defendant has pending charges of sexual battery (against a 14-year-old), simple criminal damage to property, unauthorized entry of an inhabited dwelling, the home of the juvenile he allegedly assaulted, flight from an officer, criminal trespass, introduction of contraband into a penal institution, and simple escape.
The trial court found that, although good cause could be found to order defendant's sentences to be served consecutively, it would not do so because of the mandatory life sentence for first degree rape. Also, in explaining the impact of defendant's actions in escaping from custody during trial, the trial court noted an emotional moment in the courtroom when defendant's mother was consoled by a member of the victim's family. The court also pointed out that defendant had not shown any remorse until that day, which the court hoped was sincere.
The trial court did not abuse its discretion in sentencing Lewis. The trial court reviewed the pre-sentence investigation report and adequately considered the appropriate factors set forth in La. C. Cr. P. art. 894.1. Although the defense claims that the trial court failed to consider the mitigating factors, the defense failed to identify any such factors or establish how they outweigh the aggravating circumstances in this case.
The imposed maximum sentences are not constitutionally excessive. Considering the facts of this case and defendant's extensive criminal history, the sentences imposed by the trial court neither shock the sense of justice nor are they grossly disproportionate to the severity of the offenses of conviction. State v. Dorthey, 623 So.2d 1276 (La. 1993) ; State v. Lewis, 49,138 (La. App. 2 Cir. 06/25/14), 144 So.3d 1174.
Ineffective Assistance of Counsel
In this pro se assignment of error, defendant argues that he received ineffective assistance of counsel on several grounds. The state did not respond to this pro se assignment of error.
Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Moore , 48,769 (La. App. 2 Cir. 02/26/14), 134 So.3d 1265, writ denied , 14-0559 (La. 10/24/14), 151 So.3d 598 ; State v. Eiskina , 42,492 (La. App. 2 Cir. 09/19/07), 965 So.2d 1010. However, when the record is sufficient, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. Id.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by U.S. Constitutional Amendment VI. State v. Wry , 591 So.2d 774 (La. App. 2 Cir. 1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).
First, to establish that his attorney was ineffective, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that counsel's deficient performance prejudiced his defense and that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would *247 have been different. Strickland , supra ; State v. Reese , 49,849 (La. App. 2 Cir. 05/20/15), 166 So.3d 1175, writ denied , 15-1236 (La. 06/03/16), 192 So.3d 760.
A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Smith , 49,356 (La. 1App. 2 Cir. 11/19/14), 152 So.3d 218, writ denied , 14-2695 (La. 10/23/15), 179 So.3d 597. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland , supra ; State v. Reese , supra .
The filing and pursuit of pre-trial motions is squarely within the ambit of the attorney's trial strategy, and counsel is not required to engage in efforts of futility. State v. Jones , 49,396 (La. App. 2 Cir. 11/19/14), 152 So.3d 235, writ denied , 14-2631 (La. 09/25/15), 178 So.3d 565.
If the record is arguably insufficient to resolve this matter on appeal, this claim would be more appropriately raised in an application for post-conviction relief, where a full evidentiary hearing may be ordered. However, on the record before us, defendant's claims of ineffective assistance of counsel are without merit. There is no evidence that defendant's attorney failed to conduct an adequate investigation into the facts of this case or failed to interview witnesses. To the extent that Lewis complains that the evidence was insufficient to support his convictions, that claim is without merit, as discussed above.
Defendant also claims that his attorney was ineffective in failing to file a motion to suppress based on the warrantless search of his personal belongings at the hospital. However, at trial, Investigator Huff testified that he obtained a search warrant for defendant's personal belongings after it was discovered that defendant allegedly took money from N.H. during the incident. The sum of $557 was recovered during a search and seizure conducted pursuant to the warrant, and defendant has failed to allege any other facts which would require suppression of the money. Defendant has neither shown that a motion to suppress should have been granted nor that his attorney was deficient in failing to file a motion to suppress.
As to defendant's claim that his attorney was ineffective in failing to obtain independent expert witnesses, defendant does not set forth a specific reason why such experts were necessary or allege that the state's expert testimony was incomplete or suspect in any way. Mere conclusory statements are insufficient to establish a claim of ineffective assistance of counsel. Defendant failed to show that his attorney was deficient in failing to obtain expert witnesses, or that the testimony of such witnesses would have changed the outcome of this case. Defendant failed to meet his burden of proving that he received ineffective assistance of counsel.
ERROR PATENT REVIEW
Pursuant to La. C. Cr. P. art. 920, all appeals are reviewed for errors patent on the face of the record. Our review of the record reveals four errors patent. First, defendant's sentence for second degree kidnapping is indeterminate. The sentencing provision for second degree kidnapping requires that at least two years of the sentence be served without parole, probation, or suspension of sentence. La. R.S. 14:44.1(C). The trial court sentenced defendant to 40 years at hard labor "with at least two years to be served without benefit of parole, probation, or suspension of sentence." A trial court is required to *248 impose a determinate sentence. La. C. Cr. P. art. 879 ; State v. Thompson , 50,025 (La. App. 2 Cir. 09/30/15), 178 So.3d 1058. The trial court failed to clearly state a determined term for the restriction from benefits, as the words "at least" do not convey a specific length of time. Id. Accordingly, we vacate defendant's sentence for second degree kidnapping and remand the matter to the trial court for resentencing. See State v. Thompson , supra .
Second, the trial court minutes incorrectly state that defendant's sentence for simple robbery is to be served "without the benefit of parole or suspension of sentence." The sentencing transcript shows that the trial court did not restrict any benefits as to that sentence. When the transcript and the court minutes conflict, the transcript prevails. State v. Lynch , 441 So.2d 732 (La. 1983). See also La. R.S. 14:65(B). On remand, the trial court is ordered to correct the court minutes to accurately reflect that defendant's sentence for simple robbery was imposed with no restriction of benefits.
Third, the trial court did not properly inform defendant of the sex offender registration and notification requirements outlined in La. R.S. 15:543. First degree rape is defined as a sex offense under La. R.S. 15:541. La. R.S. 15:543 requires that the trial court notify a defendant convicted of a sex offense, in writing, of the registration and notification requirements, and that an entry be made in the court minutes stating that the written notification was provided to the defendant.
On remand, the trial court is to provide the appropriate written notice to defendant of the sex offender registration requirements and file written proof of such notice into the record of these proceedings. State v. Wilson , 50,418 (La. App. 2 Cir. 04/06/16), 189 So.3d 513, writ denied , 16-0793 (La. 04/13/17), 218 So.3d 629 ; State v. Scott , 42,997 (La. App. 2 Cir. 02/13/08), 975 So.2d 782.
CONCLUSION
For the foregoing reasons, defendant's convictions are affirmed. Defendant's sentences for first degree rape, attempted second degree murder, and simple robbery are affirmed. Defendant's sentence for second degree kidnapping is vacated, and the matter is remanded to the trial court for resentencing. The trial court is instructed to correct the court minutes and comply with the sex offender notification requirements.

No further information regarding defendant's juvenile history was provided.