WILLIAMS, C.J.
The defendant, James Ondrey Harris, was charged by bill of information with attempted second degree murder, a violation of La. R.S. 14:27 and 14:30.1. After a jury trial, the defendant was found guilty as charged. Defendant's motions for new *956 trial and for post-verdict judgment of acquittal were denied. The trial court sentenced defendant to serve 50 years at hard labor, without the benefit of parole, probation or suspension of sentence. Defendant appeals his conviction and sentence. For the following reasons, we affirm.
FACTS
The record shows that on September 28, 2015, Laconna Lashay Smith was transported via ambulance from her home in Monroe, Louisiana, to St. Francis Medical Center after being severely beaten and choked by the defendant. Smith was intubated and airlifted that same day to University Health Hospital in Shreveport, where she was admitted into the ICU. Days later, when Smith was able to speak, she confirmed to police that defendant was her assailant. Defendant was arrested and charged with the attempted second degree murder of Smith.
After a trial, defendant was found guilty as charged by a unanimous jury. His pro se motions for new trial and motion for post-verdict judgment of acquittal were denied following a hearing. Defendant was sentenced to 50 years at hard labor to be served without the benefit of parole, probation or suspension of sentence. This appeal followed.
DISCUSSION
The defendant contends the evidence is insufficient to support his conviction for attempted second degree murder. Defendant asserts that the state failed to prove that he possessed the specific intent to kill Smith.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So.3d 717, writ denied , 2016-1479 (La. 5/19/17), 221 So.3d 78. This standard, now legislatively embodied in La. C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 2005-0477 (La. 2/22/06), 922 So.2d 517.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442 ; State v. Mitchell , 50,188 (La. App. 2 Cir. 11/18/15), 181 So.3d 800, writ denied , 2015-2356 (La. 1/9/17), 214 So.3d 863. A reviewing court affords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Mitchell, supra .
To sustain a conviction for attempted second degree murder, the state must prove that the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death. La. R.S. 14:27 ; 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," La. R.S. 14:30.1, attempted second degree murder requires specific intent to kill. State v. Bishop , 2001-2548 (La. 1/14/03), 835 So.2d 434. Proof of specific intent to inflict great bodily harm is insufficient for a conviction for attempted second degree murder. State v. Lewis , 51,672 (La. App. 2 Cir. 11/15/17), 245 So.3d 233 ;
*957 State v. Patterson , 50,305 (La. App. 2 Cir. 11/18/15), 184 So.3d 739, writ denied , 2015-2333 (La. 3/24/16), 190 So.3d 1190.
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. State v. Murray , 49,418 (La. App. 2 Cir. 1/14/15), 161 So.3d 918, writ denied , 2015-0379 (La. 4/8/16), 191 So.3d 582. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Bishop , supra. Specific intent to kill may also be inferred from the extent and severity of the victim's injuries. See State v. Harrell , 2001-841 (La. App. 5 Cir. 2/26/02), 811 So.2d 1015. The determination of whether the requisite intent is present is a question for the trier of fact. State v. Lewis, supra .
In the present case, Monroe Police Detective Jeremy Sturdivant testified as follows: when he arrived at the crime scene, Smith had already been transported via ambulance to the hospital; he and Sergeant Ferguson executed a search warrant at Smith's home and discovered blood stains on the floor along with hand towels, washrags, and an undershirt that appeared to have been used to wipe up some of the blood; he interviewed Smith at University Health Hospital, where she was receiving medical care; Smith informed him that defendant was the person who had beaten her on September 28, 2015; and defendant was apprehended approximately two months after the attack.
Monroe Police Detective Kris Fulmer testified as follows: he visited Smith at St. Francis Medical Center in Monroe on the day of the attack with Sgt. Ferguson, who took a photograph showing Smith with a neck brace and a breathing tube ; her eyes, nose and lips were very swollen and bloody and Smith was unable to speak to police at that time; at the hospital he spoke with Smith's friend, Anastasia Hester, who told him that she had received a text message from defendant while sitting with Smith; he took a photo of the text from her phone.
Anastasia Hester testified as follows: she went to Smith's house on September 28, 2015, because Smith felt "scared" and "uncomfortable" about defendant's planned visit; some time after defendant arrived, she walked to a nearby library; Smith sounded "worried" when they spoke on the phone as she walked back to the house; when she returned to the house, the doors were locked; Hester tried calling Smith for approximately an hour while she waited outside the house, but Smith never answered; while she was standing in front of Smith's house she saw Bokeem Marsalis, who stopped his car; she told Marsalis that she was locked out and needed her bag from inside; Marsalis went around to the back of the residence and entered Smith's house through a window; Hester then saw defendant come out of Smith's front door without his shirt and holding something in his pants; Hester went inside and saw that Smith's face was swollen and bloody and she was having difficulty breathing; shortly after Smith arrived at the hospital, Hester received a text message from defendant sent on Smith's cell phone; defendant wrote that he wanted "to let Shay [Smith] and bokeem now dat we go keep da police out of our bizness" and that he would settle things the "street way," which was a reference to fighting.
Janie Johnson testified as follows: she has been Smith's friend for many years; Smith and Harris dated for approximately seven months before Smith ended the relationship; she received a text message from defendant one week before Smith was beaten; in the text defendant referred to Smith and admitted that he "beat her ass *958 in Tallulah" because he thought she was cheating; she showed the text message to police after Smith was attacked by defendant; Smith had previously forwarded to her two text messages from defendant; in one of the texts, defendant wrote "Come to me and I will spare yo mom. I promise dat much. Show me u love yo Moma and wud sacrifice yo life for hers. Come to me now and she is safe or u can choose not to and both of y'all die anyway. I'll kill her and someone else will get u at her funeral[. Accept] yo death if wat u believe is true and come to me now[.]"
Latosha Smith Bonner, Smith's older sister, testified that she stayed with her sister every night until she was released from the hospital. Bonner explained that Smith was in the ICU for eight days and then in a regular hospital room for an additional three or four days. Bonner testified that Smith was not in a condition to talk for the first five or six days after she arrived at the hospital.
Laconna Smith testified as follows: she dated defendant for some months in 2015, but ended the relationship in August after he physically assaulted her; defendant did not accept that the relationship was over, and continued contacting her by phone and coming to her house; on September 28, 2015, she said defendant could visit her after Hester agreed to be present; after defendant arrived, they spoke for a few minutes and then, to Smith's surprise, Hester said she was leaving; Smith called Hester after she left, and while she was on the phone, defendant locked the door; then he grabbed Smith's phone and warned "you thought what happened in Tallulah was something...you ain't seen nothing yet"; defendant then began choking her and she was unable to scream; he punched her in the face more than ten times; he also grabbed her by the hair and repeatedly slammed her face against the floor; she pleaded with defendant to stop and warned him that she thought he was going to kill her, but he responded that he didn't care; the attack ended when Marsalis came into Smith's house and defendant ran out; the beating lasted at least 30 minutes and at some point she lost consciousness; some time after she ended their relationship, but before the date of this attack, she had received a text message from defendant in which he wrote that he wanted to have sex "before I kill u cuz u called me a perv" and that he was excited by the thought of having sex "while I put a bullet in yo head and watch u bleed[.]"
Defendant testified that he met Smith in April of 2015, but he soon began dating another woman and Smith ended their relationship in early July of 2015. Defendant admitted that he and Smith were in a physical altercation in August while they were staying in Tallulah. Defendant stated that on September 28, 2015, Smith asked him to come to her house to talk. He testified that he arrived at Smith's house around 8:45 a.m., but claimed that he never saw Hester at the house. Defendant stated that he became angry while he was there because Marsalis entered the house and after he left defendant and Smith began arguing. Defendant admitted to punching Smith in the face several times, but claimed that he stopped when he saw that her eye was injured. Defendant alleged that Smith then began fighting him and that he choked her until she stopped resisting. Defendant testified that he and Smith then talked for a while before he helped her change her bloody clothes. Defendant stated that Marsalis came back with another man and after the men saw Smith they told him to leave and he did. Defendant denied sending the text messages identified by Johnson and Smith. Defendant claimed that he had no intention of killing Smith.
*959 The evidence adduced at trial showed that defendant's brutal attack on Smith involved punching her in the face numerous times, choking her, and repeatedly hitting her head against the floor. Smith pleaded with defendant not to kill her and lost consciousness as a result of being choked. Instead of seeking medical care for Smith, defendant expressed no concern for her restricted breathing and told her that he did not care if she died. The testimony shows that he continued to beat her and only stopped his savage attack when interrupted by another person's entry into Smith's house. The victim's injuries required her to be intubated, airlifted from Monroe to University Health Hospital, and treated in the ICU for more than a week. The severity of her injuries, coupled with defendant's life-threatening text messages to Smith prior to the attack, demonstrated his specific intent to kill Smith. Thus, the record supports the jury's determination that defendant was guilty of attempted second degree murder. Accordingly, this assignment of error lacks merit.
Sentencing
The defendant contends the trial court erred in imposing an excessive sentence. Defendant argues that the goal of punishment can be accomplished with a less severe sentence.
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith , 433 So.2d 688 (La. 1983) ; State v. Lathan , 41,855 (La. App. 2 Cir. 2/28/07), 953 So.2d 890, writ denied , 2007-0805 (La. 3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with the article. State v. Lanclos , 419 So.2d 475 (La. 1982) ; State v. Swayzer , 43,350 (La. App. 2 Cir. 8/13/08), 989 So.2d 267.
The important elements which should be considered during sentencing are the defendant's personal history (age, family ties, marital status, health, and employment), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones , 398 So.2d 1049 (La. 1981) ; State v. Ates , 43,327 (La. App. 2 Cir. 8/13/08), 989 So.2d 259, writ denied , 2008-2341 (La. 5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker , 41,547 (La. App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied , 2007-0144 (La. 9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 2001-0467 (La. 1/15/02), 805 So.2d 166 ; State v. Robinson , 40,983 (La. App. 2 Cir. 1/24/07), 948 So.2d 379. The court is given wide discretion in the imposition of sentences within the statutory limits. Such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams , 2003-3514 (La. 12/13/04), 893 So.2d 7 ;
*960 State v. Cotten , 50,747 (La. App. 2 Cir. 8/10/16), 201 So.3d 299.
Read together, La. R.S. 14:30.1 and 14:27 provide that attempted second degree murder is punishable by a term of imprisonment at hard labor of not less than 10 years nor more than 50 years, without the benefit of parole, probation, or suspension of sentence.
At the sentencing hearing conducted in this case, the trial court noted its review of the applicable sentencing factors provided in Article 894.1 and defendant's presentence investigation (PSI) report. The trial court found that there was an undue risk that defendant would reoffend if not imprisoned, that he was in need of correctional treatment and that a lesser sentence would deprecate the seriousness of defendant's crime. The trial court discussed defendant's education, work and family history, noting that although defendant has four adult children, he has never taken care of them financially or in any other manner. The trial court also considered statements provided by Smith and made by defendant's sister on his behalf. Although defendant's sister and his trial attorney claimed that defendant has changed since his most recent incarceration, the trial court found that his extensive criminal history, including five prior felony convictions, warranted imposition of the 50-year maximum sentence.
The record evidences the trial court's compliance with Article 894.1 and supports the finding that defendant was in need of correctional treatment and was likely to reoffend. Although the trial court noted that defendant had obtained a GED and had been employed, his status as a sixth felony offender was a significant aggravating factor supporting the trial court's imposition of the maximum sentence.
The record further reveals that the sentence is not constitutionally excessive. Given the fact of the severe and prolonged beating that defendant inflicted on Smith, as well as defendant's history of committing violent crimes, the imposition of the maximum term of imprisonment in this case is not disproportionate to the severity of the crime and does not shock the sense of justice. Thus, the trial court did not abuse its discretion in sentencing this defendant. Accordingly, this assignment of error lacks merit.
Defendant's Supplemental Brief
The defendant filed an untimely supplemental pro se brief. Defendant alleges that the state failed to establish a proper foundation to show that he was the person who sent the text messages to Hester, Johnson and Smith.
Authentication or identification of evidence is required for that evidence to be admissible at trial. La. C.E. art. 901. Authentication is a condition precedent to admissibility that is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. State v. Lee , 2001-2082 (La. App. 4 Cir. 8/21/02), 826 So.2d 616, writ denied , 2002-2549 (La. 9/5/03), 852 So.2d 1019. Generally, the standard applied by state and federal courts with respect to the authentication of a document is whether there is sufficient evidence from which a reasonable juror could find that the proposed evidence is what the proponent claims it to be. State v. Haydin , 17-234 (La. App. 5 Cir. 12/20/17), 235 So.3d 1293, writ denied , 2018-0114 (La. 10/29/18), 254 So.3d 701.
In this case, the state introduced four text messages at trial. Hester testified that while she was at the hospital with Smith, she received a text message from what she believed was Smith's cell phone number. As noted above, the text advised *961 Hester to tell the victim not to involve the police. Hester identified a photograph taken by police of her phone with the text on the screen, which was cracked. The photograph of the text was admitted into evidence without objection.
In her testimony, Johnson identified a copy of a text message she had received from defendant in which he admitted beating Smith in Tallulah. Johnson testified that she knew the text had come from defendant because she had spoken with him on the phone before and recognized his phone number. Again, the text message was admitted into evidence without objection.
Johnson also identified copies of text messages forwarded to her by Smith that had been received from defendant. The texts contained threats of violence, sexual assault and murder. Johnson explained that Smith sent her the texts because she was "scared for her safety and her mom's." The defense objected to admission of the texts arguing that the state had failed to show that the messages had been sent to Smith from defendant's phone. Johnson testified she knew Smith's phone number and that each time defendant sent a text to Smith, she sent it to Johnson. The objection was overruled.
In addition, Smith testified at trial that she had forwarded the two text messages from defendant to Johnson. Smith stated that she knew defendant's phone number at the time and that he had sent her the texts. Smith testified that she then forwarded the texts so that if anything happened to her, someone would know that defendant was involved.
Based upon this record, the threatening text messages sent by defendant to Smith and then forwarded to Johnson were properly authenticated by the witness testimony. Smith provided defendant's phone number at trial and testified that she had received the threatening texts from his cell phone number. Johnson testified that those texts were then forwarded from Smith's phone number, which was known to Johnson. Thus, the jury could reasonably find that defendant had sent the text messages. Accordingly, the assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.