Judgment rendered November 20, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,876-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

ANTHONY LATRELL WILLIS                Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019-CR-7206

Honorable Frederick Douglass Jones, Judge

* * * * *

LOUISIANA APPELLATE PROJECT        Counsel for Appellant
By: Edward Kelly Bauman

ROBERT STEPHEN TEW                  Counsel for Appellee
District Attorney

BARBARA ANN COLDIRON
SHIRLEY WILSON DAVIS
Assistant District Attorneys

* * * * *

Before PITMAN, COX, and THOMPSON, JJ.

**THOMPSON, J.**

Anthony Latrell Willis attacked his former girlfriend with a crowbar with such force that the dozens of blows he administered knocked out several of her teeth and caused significant cuts and abrasions on her head, face, and body, requiring numerous stitches and medical staples. Willis was convicted by a unanimous jury of attempted second degree murder, and the trial court sentenced him to 25 years at hard labor, without benefit of parole, probation, or suspension of sentence. On appeal, Willis argues that there was insufficient evidence to convict him of attempted second degree murder, and that his sentence is constitutionally excessive. For reasons more fully detailed below, we affirm his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

On December 14, 2019, Orlandtha Moore ("Moore") was attacked at her home by her former boyfriend, Anthony Latrell Willis ("Willis"). Moore and Willis resided together in her trailer in Monroe, Louisiana, for two years prior to the attack. Moore had recently discovered Willis was a sexual offender, and she ended the relationship and informed him she wanted him to leave the residence. Willis attempted to contact Moore numerous times after leaving their shared residence, but she refused to respond. On the night of the attack, Willis returned to the residence, and as will be described below in Moore's trial testimony, Willis attacked her with a crowbar and beat her severely causing serious injuries.

Willis was arrested following the attack and was initially charged with aggravated battery. Willis' bill of information was eventually amended from aggravated battery to attempted second degree murder, a violation of La. R.S. 14:27 and La. R.S. 14:30.1. Willis' jury trial commenced on June 26,

2023, but resulted in a mistrial by consent because the defense did not know the charge had been upgraded. A trial by jury commenced again on July 31, 2023. The following testimony was adduced at the trial.

Moore testified that the night she was attacked, she was leaving her house with her camera to go work at an event as a photographer. Unbeknownst to her, Willis had walked to her trailer on foot and was in the driveway waiting for her to come outside. Willis abruptly approached her on her porch with a crowbar in his hand and struck Moore with the crowbar repeatedly in the head, face and body. Moore testified that Willis said to her during the beating: "if he couldn't live there with her no one could" and "I'm going to be your God … you're going to have to just meet your judgment day." Moore testified that she believed Willis was trying to kill her when he attacked her. His brutal beating of her that night supported her conclusion.

After multiple blows with the crowbar, Moore testified that she stopped fighting back and stopped moving. Willis stopped hitting her and left her motionless on her porch. Moore testified that she assumed Willis had left; she mustered the strength to get up and try to find help. Unfortunately, she was unaware that Willis had not left, and he observed Moore had survived his attack and was attempting to get up. Moore got to her feet and attempted to flee, but Willis chased her down and began beating her with the crowbar again. Moore testified that she ran toward a neighbor's house, who was inside her vehicle at her residence and observed the attack taking place. Moore testified that her neighbor honked her car horn, and Willis stopped his renewed attack and fled the scene, taking the crowbar with him.

Regarding her injuries, Moore testified those included lacerations to her head, face, mouth, arm, and bruised ribs and that seven of her teeth were knocked out during the attack. She received staples in her scalp on two different wounds, as well as 15 stitches in her right arm. She testified regarding the photographs of her injuries displayed at trial and confirmed that her lacerations were caused by blows from the crowbar. Moore further testified that she experienced seizures after the attack and was re-admitted to the hospital two days after the incident due to those seizures. Moore testified that the night of the attack, she was wearing a wig, which she believed provided some cushion to the blows from the crowbar to her scalp, which would have otherwise injured her even more severely.

Glen Moore, Moore's father, testified at trial that he saw his daughter the night of the attack in the hospital and took photos of her injuries. Mr. Moore confirmed that the photos he took, which were introduced at trial into evidence, reflected what he observed that night in the hospital.

Corporal Caleb Smith with the Monroe Police Department testified at trial that he responded to the Aurora Mobile Trailer Park in Monroe after Moore's attack. Cpl. Smith testified that Moore informed him that she was attacked with a crowbar, and she unequivocally identified Willis as her attacker. Cpl. Smith observed some teeth and blood around the porch of the trailer where the attack occurred. Cpl. Smith testified that during their investigation, police officers learned that Willis was staying at the Economy Inn. Cpl. Smith confirmed that Moore's neighbor had called 911 after observing her running to her car after the attack.

Detective Colette Major with the Monroe Police Department also testified at trial that she responded to the scene of Moore's attack and

conducted the investigation to locate Willis. Det. Major testified that on the porch of Moore's trailer, she observed blood, two teeth, and one pair of eyeglasses. Det. Major took photographs of the scene, showing the porch and blood from the attack. Det. Major testified that she accompanied Cpl. Smith to the Economy Inn to try to locate Willis; he was not at the hotel, but his vehicle (a silver Pontiac Grand Am) was there. Det. Major testified that the next day, she went to Willis' employer, Steele Fabricators in Monroe, and discovered that Willis did not report for work, and his employer had not heard from him.

Det. Major testified that Moore provided her with email messages she had received from Willis after the attack, dated December 23, 2019. The emails were threatening in nature. Det. Major testified that pursuant to a "be on the lookout" advisory with the Morehouse Parish Sheriff's Office, Willis was ultimately apprehended at Walmart in Morehouse Parish and taken into custody. Willis was transported back to Monroe by a Louisiana State Trooper. Det. Major testified that Willis was placed under arrest and initially charged with aggravated battery.

On December 24, 2019, Det. Major conducted an interview with Willis. Willis knowingly and intelligently waived his *Miranda* rights and provided his videotaped and recorded statement, which was played for the jury at trial. Willis admitted to striking Moore. Det. Major testified that when Willis was asked where he hit Moore, he responded "in the head, in the face, wherever I could." However, Willis denied using a weapon (the crowbar) and claimed to only have beaten her with his hands. Det. Major testified that she believed Willis beat Moore with a blunt object and that his

4

intentions were to "hurt her real bad, possibly kill her." Willis did not testify at trial.

On August 3, 2023, the jury returned a unanimous verdict of guilty as charged of attempted second degree murder. On October 31, 2023, a motion for post-verdict judgment of acquittal was denied. Willis was sentenced to 25 years at hard labor, to be served without benefit of probation, parole, or suspension of sentence. A motion to reconsider sentence was filed and denied without hearing. This appeal followed, in which Willis asserts two assignments of error.

## DISCUSSION

**<u>Assignment of Error No. 1</u>: The evidence presented at trial, when viewed in the light most favorable to the prosecution, was insufficient to find Anthony Latrell Willis guilty of the charge of Attempted Second Degree Murder of Moore beyond a reasonable doubt.**

Willis argues that he did not have the specific intent to kill Moore; therefore, he should not have been found guilty of attempted second degree murder. Willis notes that Moore had recently removed him from their shared home and was refusing to communicate with him in any way. Willis admits to beating her, but claims he did not intend to kill her. Further, Willis told the police that he had a gun in his jacket, but he did not remove it during the incident. Willis asserts that at most, he may be guilty of aggravated battery.

Willis admits that a crowbar can be considered a dangerous weapon to satisfy the requirements of a specific intent to kill. However, Willis argues that Moore's testimony detailing the severity of the beating she received, which included at least 30 hard blows to her body, face, and head with a crowbar, was untrue. Willis notes that none of Moore's medical records for

5

treatment of her injuries were produced at trial. Willis asserts that if he had actually beaten Moore with a crowbar as intensely as she claims, her injuries would have been far more severe than what she reported. Also, in addition to the lack of medical records, no doctor or medical staff testified regarding the extent of her injuries and whether they were life-threatening.

Willis argues that an appellate court can modify the verdict and render a judgment of conviction on a lesser included responsive offense, such as manslaughter or aggravated battery. Willis requests this Court reverse his conviction and sentence and render a verdict of aggravated battery in its place.

In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So. 2d 676, 678 (La.1984).

The appellate court does not assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Bass,* 51,411 (La. App. 2 Cir 6/21/17), 223 So.3d 1242. A reviewing court affords great deference to a trial court's decision to accept or reject the testimony of a witness in whole or in part. *Bass, supra.*

To sustain a conviction for attempted second degree murder, the state must prove that the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's

6

death. La. R.S. 14:27; 14:30.1. Although the statute for second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," attempted second degree murder requires the specific intent to kill. *State v. Bishop*, 01-2548 (La. 1/14/03), 835 So. 2d 434. Proof of specific intent to inflict great bodily harm is insufficient for a conviction for attempted second degree murder. *State v. Smith,* 53,827 (La. App. 2 Cir. 3/3/21), 315 So. 3d 407; *State v. Lewis*, 51,672 (La. App. 2 Cir. 11/15/17), 245 So. 3d 233, *writ denied*, 19-01292 (La. 7/17/20), 298 So. 3d 158; *State v. Patterson*, 50,305 (La. App. 2 Cir. 11/18/15), 184 So. 3d 739, *writ denied*, 15-2333 (La. 3/24/16), 190 So. 3d 1190. Evidence establishing an intent to kill would be required to support a conviction for attempted second degree murder. In this matter, the record is replete with sufficient evidence to support a conclusion that Willis intended to kill Moore.

Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. *State v. Minor*, 52,091 (La. App. 2 Cir. 9/26/18), 254 So. 3d 1278; *State v. Murray*, 49,418 (La. App. 2 Cir. 1/14/15), 161 So. 3d 918, *writ denied*, 15-0379 (La. 4/8/16), 191 So. 3d 582. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *State v. Bishop, supra.* Specific intent to kill may also be inferred from the extent and severity of the victim's injuries, and the defendant's use of a deadly weapon to produce those injuries, which involved serious risk of death. *State v. Washington*, 50,424 (La. App. 2 Cir. 3/16/16), 188 So. 3d 350, *writ denied*, 16-0718 (La. 4/13/17), 218 So. 3d 119. The determination of whether the requisite intent

7

is present is a question for the trier of fact. *State v. Smith, supra; State v. Lewis, supra; State v. Patterson, supra.*

Following a thorough examination of the record in its entirety, we find that there was sufficient evidence to convict Willis of attempted second degree murder. The record clearly shows that Willis surprised Moore, beat her so extensively in the body, head, and face with a deadly weapon – a crowbar – that teeth and blood littered the front porch and that he did not stop administering this beating until she stopped moving. Believing Willis had fled the scene, when Moore rose to seek help and medical attention, Willis set upon her again and returned to beat her with the crowbar when he saw that she was still alive and was trying to escape him. Finally, Willis expressed that it was his intention to kill Moore, stating to her that she would meet her "judgment day" while he was beating her. Though Willis failed to meet his objective of killing Moore on the night that he beat her with a crowbar, the record clearly shows that he exhaustively attempted to do so, twice, and possessed the specific intent to kill required for a conviction of attempted second degree murder.

Willis' actions the night of the attack, including his words during the attack, followed by the threatening correspondence he sent to Moore in the days following the attack while he was on the run from law enforcement, constitute sufficient evidence for his conviction. Accordingly, viewing the evidence in the light most favorable to the prosecution, we find that the State proved that Willis possessed the requisite specific intent to kill. This assignment of error is without merit.

**Assignment of Error No. 2: The 25-year sentence at hard labor without benefits, imposed upon Anthony Latrell Willis by the trial court, is constitutionally excessive as it is grossly out of proportion to the**

**seriousness of the offense and is nothing more than the needless imposition of pain and suffering.**

Willis acknowledges that the trial court reviewed his presentence investigation report and considered the factors set forth in La. C. Cr. P. art. 894.1. Willis also admitted two prior felonies. As possible mitigating factors, the trial court noted that Willis had obtained his GED and maintained steady employment. The sentencing range for a conviction of attempted second degree murder is not less than 10 nor more than 50 years without benefit of parole, probation, or suspension of sentence. La. R.S. 14:27(1)(a). Willis argues that in his case, the sentence of 25 years at hard labor without benefits must yield to the constitutional prohibition against excessive punishment. Willis argues that the sentence imposed is not particularized to him and the offense he committed. He asserts that his sentence is constitutionally excessive because it is grossly disproportionate to the severity of the crime and amounts to a needless imposition of pain and suffering. The victim, and this court, disagree.

The law concerning excessive sentences is well-settled; claims are reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. *State v. Vanhorn*, 52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 19-00745 (La. 11/19/19), 282 So. 3d 1065. A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance. *Id.*

A sentence violates Louisiana Constitution Article I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v.*

9

*O'Neal*, 55,559 (La. App. 2 Cir. 2/28/24), 381 So. 3d 273; *State v. McKeever*, 55,260 (La. App. 2 Cir. 9/27/23), 371 So. 3d 1156. To constitute an excessive sentence, a reviewing court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock the sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and, therefore, is nothing more than the needless imposition of pain and suffering. *State v. Griffin*, 14-1214 (La. 10/14/15), 180 So. 3d 1262; *State v. Efferson*, 52,306 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1153, *writ denied*, 18-2052 (La. 4/15/19), 267 So. 3d 1131. The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Griffin*, *supra*; *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. On review, an appellate court does not determine whether another sentence may have been more appropriate but whether the trial court abused its discretion. *State v. O'Neal, supra; State v. McKeever*, *supra*.

Willis concedes and the record shows that the trial court adequately considered the sentencing guidelines of Article 894.1, as well as the presentence investigation report in this case. The trial court found that a lesser sentence would deprecate the seriousness of the offense, that Willis' conduct during the commission of the offense manifested deliberate cruelty to Moore, that he used threats of or actual violence in the commission of the offense, and that he used a dangerous weapon in the commission of the offense. Willis has two prior felonies and a history of violence, including prior convictions for sexual battery (reduced from forcible rape), failure to register as a sex offender, and domestic abuse battery. Willis faced a

10

sentencing range of not less than 10 nor more than 50 years without benefit of parole, probation, or suspension of sentence. Willis failed to show that the trial court abused its discretion in sentencing him to the midrange sentence of 25 years, under these specific facts and circumstances. Accordingly, this assignment of error is without merit.

## ERROR PATENT

A review of the record reveals that the trial court failed to state that Willis' 25-year sentence must be served at hard labor. The failure to include the requirement that the 25-year sentence be served at hard labor is an illegally lenient sentence. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C. Cr. P. art. 882(A).

Further, the appellate court may notice sentencing errors as error patent. *State v. Williams*, 00-1725 (La. 11/28/01), 800 So. 2d 790. Because La. R.S. 14:30.1 is a mandatory felony, requiring any sentence to be served at hard labor, the error is harmless and self-correcting. *State v. Evans*, 51,811 (La. App. 2 Cir. 1/10/18), 245 So. 3d 1112, *writ denied*, 18-0281 (La. 11/20/18), 256 So. 3d 992.

## CONCLUSION

For the foregoing reasons, Anthony Latrell Willis' conviction and sentence are affirmed.

**AFFIRMED.**

11